STATE of Utah, Plaintiff and Respondent,

v.

Phillip G. SNYDER, Defendant and Appellant.

No. 20470.

Supreme Court of Utah.

July 29, 1987.

Rehearing Denied Dec. 18, 1987.

David L. Wilkinson, Kimberly K. Hornak, Salt Lake City, for plaintiff and respondent.

Rodney G. Snow, Neil A. Kaplan, Salt Lake City, for defendant and appellant.

HALL, Chief Justice:

Defendant appeals his conviction of theft of funds invested in a condominium project.[1]

In July 1979, defendant acquired a tract of land in Provo, Utah, for the purpose of developing it as a condominium project known as Temple Hills. Beginning in August 1979, defendant proceeded to presell condominiums to be built on the land. The project failed, the land was lost, and all of the investors' funds were primarily expended on defendant's unrelated ventures, which included a gold mine, a real estate agency, a house, and a shopping mall.

On October 7, 1983, defendant was charged by information with seven counts of theft by deception.[2] Apparently to avoid a statute of limitations bar to the prosecution, the information was amended to charge nine counts of theft.[3] The information specifically relied upon Utah Code Ann. § 76–6–404 (1978), theft by unlawful taking or disposition, which superseded several of the older definitions of theft, including embezzlement.[4]

At a pretrial conference, it was resolved that the statute of limitations was not an issue. And at trial, the State presented its case on the theory of embezzlement.

It was the State's evidence that as an incentive to investors, defendant offered to discount the price of each condominium purchased in an amount equal to the sum invested, up to $22,200. Alternatively, defendant offered to resell a purchased unit and return to the investor double his or her investment, which could also be as much as $22,200. The investors were told that the purpose of the sales was to generate sufficient cash to complete the purchase of the Temple Hills land and to begin construction of the condominiums. Defendant also represented that the investment opportunity was limited to about twelve buyers, that the funds invested would be held in trust until enough cash was on hand to pay off the sum owing on the land, and that the funds would not be expended except to purchase the land or as up-front construction money for the Temple Hills development.

It was defendant's testimony at trial that he did not hold the investors' funds in trust, nor did he intend to do so. Defendant testified that he believed the money was his to do with as he pleased since the earnest money agreement contained a non-refundability clause.

It was stipulated for purposes of trial that defendant sold a total of twenty-nine condominiums to some twenty-eight investors, for an aggregate sum of $566,600, all of which was spent by April 29, 1980, and that none of the investors received any of their money back.

At the close of all of the evidence, the trial court dismissed one of the counts of theft for lack of evidence, the alleged victim having failed to appear and testify. The jury convicted on the remaining eight counts.

The trial court sentenced defendant to eight concurrent terms of one to fifteen years and ordered him to pay a fine of $1,000 on each count. The trial court also ordered defendant to make restitution to the persons who invested in the project, not to exceed $500,000. The restitution amount was to be determined (a) by agreement between defendant and the Department of Corrections, (b) through civil litiga-

---

1. In violation of Utah Code Ann. § 76–6–404 (1978).

2. Utah Code Ann. § 76–6–405 (1978).

3. See Utah Code Ann. § 76–6–403 (1978).

4. See Utah Code Ann. §§ 76–1–105, –6–401(4), –6–403, –6–404 (1978).

tion, or (c) by further order of the court. Defendant's motion for a new trial was denied, and this appeal followed.

Defendant's first point on appeal is that the evidence was insufficient to support his convictions under the theft by unlawful taking or disposition statute, and therefore the jury must have convicted him of theft by deception, an offense time-barred by the statute of limitations.

Section 76-6-404 provides, "A person commits theft if he obtains or exercises unauthorized control over the property of another with a purpose to deprive him thereof." Subsection 76-6-401(4) defines "obtains or exercises unauthorized control" as including conduct "heretofore defined or known as ... embezzlement." Prior to the enactment of the present criminal code, we held that the offense of embezzlement was committed when one entrusted with the property of another converted it to his or her own use.[5] However, the taking of property into possession by unlawful means, such as by trick or deception, did not constitute embezzlement.[6]

In the instant case, the State having elected to prosecute on a theory of embezzlement, it was not in dispute that defendant lawfully obtained possession of the funds of the investors. What was in dispute was the authority defendant had to expend the funds entrusted to him. Defendant denied wrongdoing of any kind. He testified that the funds were lawfully his to do with as he saw fit. On the other hand, it was the State's evidence that the funds entrusted to defendant were only to be expended on the Temple Hills project.

The jury was duly instructed on the elements of the offense of theft by unlawful taking or disposition in the following manner:

> Under the laws of the state of Utah a person commits theft if he obtains or exercises control over the property of another with a purpose to deprive the owner thereof....
>
> ....
>
> When one intentionally and knowingly appropriates the property of another lawfully in his possession, to his personal use without permission for such, the offense of theft is complete....

■ The case was presented, argued, and submitted to the jury on the theory of embezzlement, and no alternative or conflicting instructions were given on the time-barred offense of theft by deception. Defendant's contention that the jury might have convicted on the basis of an offense neither prosecuted nor instructed upon is not supported by the record and is therefore without merit.

■ Defendant's challenge to the sufficiency of the evidence relating to the specific acts of embezzlement is similarly without merit. The evidence was not in dispute as to the date and the amount invested by each investor named in the information and the date the sums were deposited in defendant's operating account. They are as follows:

| Count | Investor | Amount Invested | Date of Investment | Date Deposited into Defendant's Operating Account |
|-------|----------|-----------------|--------------------|--------------------------------------------------|
| I | Yalden | $ 7,333.33 | 11-6-79 | 12-18-79 |
| II | Jolley | $30,000.00 | 8-27-79 | 8-31-79 |
| III | Smith ) | | 8-31-79 ) | |
| IV | Smith ) | $33,000 (total) | 8-31-79 ) | 9-4-79 |
| V | Smith ) | | 8-31-79 ) | |
| VI | Smith | $ 5,333.33 | 11-6-79 | 12-18-79 |
| VII | Barlow | $22,000.00 | 9-5-79 | 9-10-79 |
| VIII | Pace | $11,000.00 | 8-31-79 | 9-4-79 |

**5.** *State v. Taylor*, 14 Utah 2d 107, 109, 378 P.2d 352, 353 (1963).

**6.** *Id.* at 109, 378 P.2d at 354.

Brent C. Morris testified on behalf of the State. He had conducted an investigation and had analyzed defendant's operating account. Morris prepared a summary of the account which was received in evidence as Exhibit 47. The exhibit reflects the deposits of the numerous investors, the expenditures, and the purpose of each expenditure from August 30, 1979, through April 29, 1980, when the account became overdrawn. None of the early expenditures appear to have been made for purposes not related to the Temple Hills project. However, beginning in October 1979 and continuing until the account was overdrawn, numerous expenditures were made for purposes clearly unrelated to the Temple Hills project. Expenditures which the jury could have concluded, beyond a reasonable doubt, were made in breach of the investors' trust are as follows:

| Date | Amount | Purpose |
|------|--------|---------|
| 10–16–79 | $40,487.96 | Payoff on Lockhart loan |
| 10–30–79 | 29,000.00 | Purchase of two lots |
| 12–11–79 | 52,109.18 | Down payment on real estate agency |
| 12–21–79 | 10,000.00 | Down payment on house |
| 1–8–80 | 5,000.00 | Mining venture |
| 1–11–80 | 5,000.00 | Business overhead, real estate agency |
| 1–21–80 | 8,700.00 | Mining equipment |
| 1–21–80 | 2,000.00 | Mining equipment |
| 1–22–80 | 20,000.00 | Partial payment on house |
| 1–23–80 | 1,000.00 | Family expenses |
| 2–27–80 | 2,009.00 | Mining venture |
| 3–7–80 | 5,250.00 | Mining venture |
| 3–12–80 | 14,394.68 | Interest in Sundance lot |
| 3–13–80 | 353.00 | Loan payment on Jaguar |
| 4–17–80 | 2,000.00 | Transfer to personal account |

■ Defendant next contends that the trial court erred in denying defendant's motion for a new trial before new counsel could obtain a transcript of the trial proceedings. The trial court denied the motion for a new trial, stating that there was sufficient evidence to submit the issue of guilt to the jury and that it was simply trial strategy for former defense counsel not to have offered evidence of which he had knowledge. Defendant does not now dispute the grounds for the ruling of the trial court.

Moreover, defendant fails to support this contention of error with any reference to the record, and this Court's perusal of the record fails to disclose any request for or denial of a continuance or that defense counsel objected to proceeding with the motion without more time to prepare. For these reasons, we do not consider the matter further and find no error on the part of the trial court.

Defendant's final point of error is that the trial court erred in ordering the payment of fines and restitution, his contentions being: (1) that the trial court made no inquiry of his ability to pay; (2) that the trial court stated no reasons for ordering restitution; (3) that the trial court ordered restitution to alleged victims not named in the information; and (4) that the manner of enforcing the payment of fines and forfeiture was unclear in its scope.

■ It lies within the discretion of the trial court to impose sentence or a combination of sentences which may include the payment of a fine, restitution, probation, or imprisonment.[7] However, upon conviction of a crime which has resulted in pecuniary damages, in addition to any other sentence imposed, the trial court is statutorily mandated to order the payment of restitution unless the court finds that restitution is inappropriate. In this regard, Utah Code Ann. § 76–3–201 (Supp.1981) (amended 1983, 1986 & 1987) provided, in pertinent part:

(3)(a) When a person is adjudged guilty of criminal activity which has resulted in pecuniary damages, in addition to any other sentence it may impose, the court shall order that the defendant make restitution to the victim or victims of the offense of which the defendant has pleaded guilty, is convicted, or to the victim of any other criminal conduct admitted by the defendant to the sentencing court unless the court in applying the criteria in section 3(b) of this chapter, finds that restitution is inappropriate. If the court determines that restitution is appropriate or inappropriate, the court

7. *See* Utah Code Ann. § 76–3–201(1) (Supp. 1981) (amended 1983 & 1986).

shall make the reasons for the decision a part of the court record.

(b) In determining whether or not to order restitution, or restitution which is complete, partial or nominal, the court shall take into account:

(i) The financial resources of the defendant and the burden that payment of restitution will impose, with due regard to the other obligations of the defendant;

(ii) The ability of the defendant to pay restitution on an installment basis or on other conditions to be fixed by the court;

(iii) The rehabilitative effect on the defendant of the payment of restitution and the method of payment; and

(iv) Other circumstances which in the opinion of the court shall make restitution inappropriate.

(c) If the defendant objects to the imposition, amount or distribution of the restitution, the court shall at the time of sentencing allow him a full hearing on such issue.

(4) As used in subsection (3) above:

(a) "Criminal activities" means any offense with respect to which the defendant is convicted or any other criminal conduct for which the defendant admits responsibility to the sentencing court with or without an admission of committing the criminal conduct;

(b) "Pecuniary damages" means all special damages, but not general damages, which a person could recover against the defendant in a civil action arising out of the facts or events constituting the defendant's criminal activities and shall include, but not be limited to, the money equivalent of property taken, destroyed, broken or otherwise harmed, and losses such as earnings and medical expenses;

(c) "Restitution" means full, partial or nominal payment for pecuniary damages to a victim, including insured damages;

(d) "Victim" means any person whom the court determines has suffered pecuniary damages as a result of the defendant's criminal activities; "victim" shall not include any coparticipant in the defendant's criminal activities.

Subsection 76–3–201(3)(a) was amended in 1983 to require that trial courts make the reasons for restitution orders part of their written orders.[8] Thus, in this case, it was error for the trial court not to set forth in writing its reasons for ordering restitution. However, the record reflects that the error was not prejudicial.[9]

Defendant lodged no objection to the imposition, amount, or distribution of the restitution ordered. Nor did he request a hearing on the issue. Instead, he focused only upon the merits of his candidacy for probation, contending that freedom would enhance his ability to make restitution. He thus waived the right he had to challenge the order of restitution.

This is clearly a case where it was appropriate to order restitution. Defendant stipulated that he had dissipated $566,-600 of the Temple Hills investors' funds, and the evidence was that he had acquired substantial assets consisting of a house purchased from Dr. Jeffrey; interests in a shopping mall, Western American Mining, and mining equipment; and deposits totaling $334,000 not related to the Temple Hills project. Defendant also claimed to have had a personal net worth of $200,000 in 1979, and at the time of trial, he was employed as a consultant for Tel-America.

Defendant's contention that the trial court erred in ordering restitution to victims not named in the information is similarly without merit. Subsection 76–3–201(4)(d) defines "victim" as any person who the court determines has suffered pecuniary damages as a result of the defendant's criminal conduct. Also, "pecuniary damages" is defined as all special damages which a person could recover against a defendant in a civil action arising out of the same facts supporting his criminal prosecution. The fact that defendant stipulated to having caused pecuniary damage in the

---

**8.** Act of Feb. 4, 1983, ch. 85, § 1, 1983 Utah Laws 396, 397.

**9.** *See State v. Stayer*, 706 P.2d 611, 612 (Utah 1985).

amount of $566,600 to twenty-eight Temple Hills investors is dispositive of this issue.

■ Defendant's remaining contention, that the scope of the restitution order is unclear, is obviated by the clarity of the language contained in the order itself:

> 3. The Defendant is ordered to make restitution to the individuals who invested money in the Temple Hills condominium project. The amount of restitution shall be determined by: a) agreement between the Defendant and the Division of Corrections, b) as determined through civil litigation, or c) by further order of the Court. The amount of restitution shall not exceed $500,000.00.

It is thus definite and certain that defendant is to pay the pecuniary damages suffered by his victims, not to exceed $500,-000. The flexibility in the order which permits the individual amounts of restitution to be determined either by agreement, by litigation, or by order of the court comports with good sentencing practice and protects the interests of all concerned. The order does not exceed the authority prescribed by law, nor does it constitute an abuse of the trial court's discretion.[10] Consequently, we do not disturb it.

The conviction and judgment are affirmed.

STEWART, Associate C.J., and HOWE, DURHAM and ZIMMERMAN, JJ., concur.

---

**10.** *See State v. Shelby,* 728 P.2d 987, 988 (Utah 1986); *State v. Gerrard,* 584 P.2d 885, 886 (Utah 1978).