STATE of Utah, Plaintiff and Appellee,

v.

Ronald V. TWITCHELL, Defendant and Appellant.

No. 910423–CA.

Court of Appeals of Utah.

May 6, 1992.

Joseph C. Fratto, Jr., Salt Lake City, for defendant and appellant.

R. Paul Van Dam and Kenneth A. Bronston, Salt Lake City, for plaintiff and appellee.

Before GARFF, JACKSON, and ORME, JJ.

## OPINION

JACKSON, Judge:

Appellant Ronald V. Twitchell appeals the trial court's restitution order requiring him to pay the amount of insurance premium payments he obtained by deception, less credit for payments he forwarded to legitimate insurance companies or paid out for damage claims. We affirm.

## FACTS

Twitchell owned and operated an insurance brokerage business known as RONCO, which sold and serviced various types of insurance policies. Twitchell represented to a number of clients that their premium payments to him secured insurance coverage from legitimate licensed insurance companies. However, rather than securing the promised insurance, Twitchell kept the premiums, paying and processing any damage claims himself. Occasionally, he forwarded a nominal portion of the total premium payments to legitimate insurance companies. Twitchell admitted that he did not have the resources to cover any potential large losses that a legitimate company could have covered. On April 17, 1990, Twitchell was charged with thirty-four counts of theft[1] and unlawful diversion or appropriation of trust funds. Pursuant to a plea agreement, Twitchell pleaded guilty to two counts of theft by deception, both second degree felonies, in violation of Utah Code Ann. § 76–6–405 (1990), and to two counts of unlawful diversion or appropriation of trust funds, both third degree felonies, in violation of Utah Code Ann. § 31A–23–310(6) (1991). As a condition of his plea bargain, Twitchell made the following statement:

> I also know that I may be ordered by the court to make restitution to any victim or victims of my crimes, and I acknowledge responsibility to pay restitution to all victims named in the Information. I acknowledge that those persons have suffered pecuniary damages, as defined in § [73]–3–201(4)(b), Utah Code Annotated, as a result of criminal activity which I have committed. This admission is in accordance with the provisions of § 76–3–201(3)(a), (4)(a), Utah Code Annotated. The amount of restitution is to be determined at a hearing at the time of sentencing in accordance with the provisions of § 76–3–201(3)(c), Utah Code Annotated, unless an agreement is previously reached.

Twitchell was sentenced to a term of one to fifteen years on the convictions for theft by deception and a term of zero to five years on the convictions for unlawful diversion or appropriation of trust funds. He was placed on probation and required to pay restitution as a condition of probation. Twitchell objected to the imposition of res-

---

1. A later amended information specifically stated the charge of theft by deception.

titution and a hearing was conducted as required by Utah Code Ann. § 76–3–201(3)(c) (1990). At the hearing the trial court received evidence computing the restitution amount by subtracting from the total amount of premiums paid by victims named in the information the amounts Twitchell either forwarded to legitimate insurance companies or paid on claims by those victims. The trial court ordered Twitchell to pay restitution in the amount of $447,762.34, which represented the premiums paid less these credits. This amount was to be paid in monthly payments to the state of Utah, consistent with Twitchell's income and financial ability. Twitchell appeals this order of restitution.

## ISSUE ON APPEAL

Twitchell contests the trial court's restitution computation, claiming only that the victims did not suffer pecuniary damages, as required by Utah Code Ann. § 76–3–201 (1990). Subsection (3)(a)(i) of section 76–3–201 states, in pertinent part:

When a person is adjudged guilty of criminal activity which has resulted in *pecuniary damages*, in addition to any other sentence it may impose, the court shall order that the defendant make restitution up to double the amount of pecuniary damages to the victim or victims of the offense of which the defendant has pleaded guilty, is convicted, or to the victim of any other criminal conduct admitted by the defendant to the sentencing court unless the court in applying the criteria in Subsection (3)(b) finds that restitution is inappropriate.[2]

Utah Code Ann. § 76–3–201(3)(a)(i) (1990) (emphasis added). Pecuniary damages are defined as:

**2.** Subsection (3)(b) sets out the criteria:
In determining whether or not to order restitution, or restitution which is complete, partial, or nominal, the court shall take into account:
(i) the financial resources of the defendant and the burden that payment of restitution will impose, with regard to the other obligations of the defendant;
(ii) the ability of the defendant to pay restitution on an installment basis or on other conditions to be fixed by the court;

[A]ll *special damages*, but not general damages, which a person could recover against the defendant in a *civil action* arising out of the facts or events constituting the defendant's criminal activities and includes, but is not limited to, the money equivalent of property taken, destroyed, broken, or otherwise harmed, and losses such as earnings and medical expenses.

Utah Code Ann. § 76–3–201(4)(b) (1990) (emphasis added). Twitchell maintains that the premium payments for nonexisting insurance policies do not represent an actual loss to the victims and thus are not pecuniary damages under the statute, because he paid any claims victims made on the nonexistent policies and victims who had no claims were no more damaged than if they had been fully insured. Restitution in this case would be a windfall to the victims, Twitchell claims. Twitchell would thus limit the role of pecuniary damages solely to making the victims whole. We affirm because Twitchell's contention that the statute's purposes do not include rehabilitation and punishment is unsupported by the plain language of the statute. Further, his assertion that the misappropriated premium payments are not "pecuniary damages" is untenable.

## STANDARD OF REVIEW

Unless a trial court exceeds the authority prescribed by law or abuses its discretion, we will not disturb its order of restitution. *State v. Snyder*, 747 P.2d 417, 422 (Utah 1987); *Department of Employment Sec. v. Ninth Circuit Court*, 718 P.2d 782, 784 (Utah 1986) (although the court is required to consider the criteria listed in section 76–3–201(3)(b), its restitu-

(iii) the *rehabilitative effect* on the defendant of the payment of restitution and the method of payment; and
(iv) other circumstances which the court determines make restitution inappropriate.
Utah Code Ann. § 76–3–201(3)(b) (1990) (emphasis added). Twitchell does not claim that these criteria were disregarded in the restitution determination.

tion determination is discretionary and its exercise of discretion is not an arbitrary extension of judicial authority); *see also State v. Shelby*, 728 P.2d 987, 988 (Utah 1986) (per curiam) (trial court has discretion in sentencing).

## PURPOSE OF THE RESTITUTION STATUTE

The restitution statute's wording clearly contemplates penal as well as compensatory purposes for restitution. The provision of section 76–3–201(3)(a)(i), allowing the court to impose "up to double the amount of pecuniary damages to the victim" supports this view. Section 76–3–201(3)(b)(iii) requires the court to consider the rehabilitative effect as one of the criteria of the restitution determination. Taken together, these statutory provisions indicate that the court's restitution formula may consider punitive and rehabilitative purposes.

In *State v. Dillon*, 292 Or. 172, 637 P.2d 602 (1981), the Oregon Supreme Court construed its restitution statute, which is the basis for,[3] and substantially similar to Utah's restitution statute. Recognizing restitution's resemblance under the statute to a civil remedy, the court nonetheless noted that the statute's purposes were penal rather than compensatory. *Id.* 637 P.2d at 607. The Oregon Supreme Court quoted the sponsor of the Oregon bill which resulted in the passage of the restitution statute: " 'Restitution, in theory, may help rehabilitate the offender; there is a strong feeling that if the offender is made to suffer a loss and pay for the responsibility of the loss he caused, there is a greater likelihood he'll not do it again.' " *Id.* at 606–07 n. 6 (quoting Minutes, House Committee on Judiciary, January 18, 1977, p. 3). Further, " '[t]he point of restitution is a red flag to the courts that restitution does not mean restitution in full or partial restitution. It's any form of restitution that brings home to the defendant that

they damaged an individual and they should make some sort of recompense to the individual.' " *Id.* at 606–07 n. 6 (quoting Minutes, House Committee on Judiciary, April 29, 1977, p. 12). "Therefore, the first question before a sentencing court is 'what restitution, if any will best serve rehabilitative and deterrent purposes?' and the second is 'would that be recoverable as special damages if this were a civil case?'." *Id.* at 607.

In the present case, the trial court recognized that Twitchell had profited unjustly from his wrongdoing, and ordered restitution accordingly. We hold that the trial court did not abuse its discretion in considering rehabilitative and deterrent purposes and ordering restitution to prevent unjust profit from criminal activity.

## MISAPPROPRIATED INSURANCE PAYMENTS AS "PECUNIARY DAMAGES"

The statute's definition of pecuniary damages includes the misappropriated policy payments in this case, even though the victims were fortunate enough to suffer no major losses during the time they were uninsured. Pecuniary damages are "all special damages, but not general damages, which a person could recover against the defendant in a civil action arising out of the facts or events constituting the defendant's criminal activities." Utah Code Ann. § 76–3–201(4)(b) (1990). Twitchell does not contend that the damages are general rather than special. He further agrees the victims could recover damages in a civil cause of action against him. Consequently, he has failed to show that the statute does not apply.

The State suggests three theories under which the victims could recover in a civil action against Twitchell: rescission, assumpsit, or conversion. Because Twitchell's guilty plea to unlawful diversion or appropriation of trust funds and theft by deception establishes all the elements of

**3.** Hearings on H.B. No. 6, 43rd General Session of the Legislature of the State of Utah (January 25, 1979) (statement of Representative P. Lloyd Selleneit, sponsor). Representative Selleneit further stated that the bill's purpose was to "broaden[ ] the restitution program and the latitude of the courts."

conversion, we choose that theory for our analysis.

In *Allred v. Hinkley*, 8 Utah 2d 73, 328 P.2d 726 (1958) the supreme court set forth the standards for a conversion of personal property:

> A conversion is an act of wilful interference with a chattel, done without lawful justification by which the person entitled thereto is deprived of its use and possession. The measure of damages of conversion is the full value of the property. ... Although conversion results only from intentional conduct it does not however require a conscious wrongdoing, but only an intent to exercise dominion or control over the goods inconsistent with the owner's right.

*Id.* at 76, 328 P.2d at 728; *accord Phillips v. Utah State Credit Union*, 811 P.2d 174, 179 (Utah 1991). Money may be the subject of conversion when the party charged wrongfully received it. *Public Util. Dist. Number One v. Washington Pub. Power Supply Sys.*, 104 Wash.2d 353, 705 P.2d 1195, 1211 (1985), *modified*, 713 P.2d 1109 (1986); *see also Boyd v. Wimes*, 664 S.W.2d 596, 599 (Mo.Ct.App.1984) "[w]hile ordinarily money represented by a general debt cannot be the subject of conversion, an exception is recognized for misappropriated funds placed in the custody of another for a definite application"). In the present case, Twitchell admitted in his plea agreement that he had retained his victims' premium payments, presumably in a personal or corporate account under direct control, rather than the trust account required under section 31A–23–310(2) (1991). His guilty plea to theft by deception established his control over property of another by deception and with a purpose to de-

prive.[4] In so pleading, Twitchell admitted the very facts and elements necessary to prove liability in a civil proceeding for conversion.

Relying on *State v. Chambers*, 709 P.2d 339 (Utah 1985), Twitchell argues that restitution should represent the actual loss to the victim. However, his reliance on *Chambers* is misplaced. In *Chambers*, an insurance agent had made false insurance applications, overbilling the insured automobile company. The supreme court held that the proper measure of restitution in that case was the amount of money the insurance company expended to make the automobile company and its employees whole. *Id.* at 342. The court's restitution formula appears to have been based on a breach of contract damages theory appropriate to the facts of that case. However, in the instant case, the court had the latitude to use a conversion theory of damages more appropriate to the present facts. Because the measure of damages in a conversion case is the full value of the converted property, *Allred*, 8 Utah 2d at 76, 328 P.2d at 728, the trial court's formula crediting Twitchell's payments on claims and payments to legitimate insurance carriers against the converted premium payments was well within its discretionary power.[5] We thus affirm the trial court's restitution order.

GARFF and ORME, JJ., concur.

---

4.  Twitchell's complete control over the property is evidenced by his counsel's statement at oral argument that Twitchell had expended the balance of the funds for his personal purposes.

5.  We note that Twitchell does not advance alternative theories for establishing the proper amount of restitution, such as arguing that dam-

ages should be limited to the difference between the value of the benefit promised (proper insurance by a legitimate insurer) and the value of the benefit received (ad hoc coverage by Twitchell for small losses). The sole thrust of his argument is that no amount of restitution is in order since nobody really lost anything.