1999 UT App 343

**STATE of Utah, Plaintiff and Appellee,**

v.

**Santos DOMINGUEZ, Jr., Defendant and Appellant.**

**No. 981781–CA.**

Court of Appeals of Utah.

Dec. 2, 1999.

Jonathan B. Pace, Weber County Public Defender's Assoc., Ogden, for Appellant.

Jan Graham, Atty. Gen., Norman E. Plate, and Jeffrey S. Gray, Asst. Attys. Gen., Salt Lake City, for Appellee.

Before WILKINS, P.J., DAVIS, and ORME, JJ.

## OPINION

ORME, Judge:

¶ 1 Defendant Santos Dominguez, Jr. pled guilty to burglary, a second degree felony, in violation of Utah Code Ann. § 76-6-202 (1995). At sentencing, defendant was ordered to pay restitution both to the victim of his crime and directly to the victim's insurance company. Defendant appeals the trial court's order, but only insofar as it required him to pay restitution to the victim's insurance company. We affirm.

## BACKGROUND

¶ 2 On September 8, 1996, defendant entered a mobile home in Ogden, Utah, viciously assaulted a minor, then fled the state. The victim underwent reconstructive surgery to repair injuries sustained in the assault and accumulated $6,847 in medical bills. The defendant was ultimately arrested in Phoenix, Arizona. On February 11, 1998, he was extradited to Utah.

¶ 3 In exchange for defendant's guilty plea, the State agreed to remain silent at sentencing. At defendant's sentencing hearing, conducted on April 27, 1998, defendant was given a prison sentence of one to fifteen years, which was stayed pending defendant's serving 180 days in jail, completing 36 months probation, and paying $7,724.73 in restitution. The restitution was to be allocated among the victim; the victim's insurance company, Metropolitan Life Insurance Co. (Met Life); and the State.[1]

¶ 4 In response to the trial court's restitution decision, defense counsel stated his belief that, under then-current Utah law, the court was not allowed to order restitution to reimburse an insurance company. The court replied: "My understanding is I can order restitution . . . and [defendant] is responsible for whatever . . . damages arose by reason of his conduct. . . . [I]f you can show me some authority to the contrary I'll be glad to consider that."

¶ 5 On May 4, 1998, the court signed the Sentencing Order, which provided that restitution be paid in accordance with the court's prior pronouncement. Some ten days later, defendant filed a memorandum in opposition to the award of restitution, claiming the district court could not order him to pay restitution to Met Life. Defendant asserted that an insurance company was not a "victim" under the applicable restitution statute and that he should only be required to pay $2,554.41 to the victim and $376.75 to the State. A restitution hearing was held in September. In its order of November 6, 1998, the trial court concluded that the restitution award would remain $7,724.73.[2] Defendant appeals.

## STANDARD OF REVIEW

¶ 6 "We will not vacate an order of restitution unless the trial court abused its discretion or exceeded its authority." *State v. Westerman*, 945 P.2d 695, 696 (Utah Ct.App. 1997). "However, if the trial court's order is premised on statutory interpretation, as it is here, we afford the trial court's interpretation no deference and review for correctness." *Id.*

## ANALYSIS

¶ 7 Defendant contends the trial court erred in directing him to pay restitution to Met Life. Specifically, he asserts that because the burglary took place on September 8, 1996, and the sentencing hearing took place on April 27, 1998, the trial court's application of the current version of the restitution statute, which became effective May 4, 1998, was inappropriate. The restitution statute in effect at the time of the burglary, by borrowing from the Rights of Crime Victims Act, defined "victim" as

> any person against whom the charged crime or conduct is alleged to have been perpetrated or attempted by the defendant or minor personally or as a party to the offense or conduct or, in the discretion of the court, against whom a related crime or act is alleged to have been perpetrated or attempted.

Utah Code Ann. § 77–38–2 (Supp.1997).[3] *See* Utah Code Ann. § 76–3–201(4)(a)(i) (Supp.1997) ("For purposes of restitution, a victim has the meaning as defined in Section 77–38–2[.]"). We had read this definition of victim narrowly, determining that trial courts could not order that restitution be paid directly to an insurer because no crime had

---

1. The restitution total included: (1) $2,554.41 to the victim in medical expenses the victim personally paid; (2) $4,793.57 to Met Life, which is the amount of the medical expenses it paid; and (3) $376.75 to the State, the amount incurred in extraditing defendant.

2. In the restitution order, the trial court stated that the $7,724.73 was an "uninsured loss." It is unclear from the record why the trial court referred to the entire restitution amount as uninsured in its order. It could be inferred that the trial court intended to have the entire amount

paid to the victim as though it were an uninsured loss, leaving the victim to settle up with the insurer. Regardless, the trial court was clear in calculating the amount of economic damage done and concluding that defendant was responsible to pay it all. Therefore, any confusion in the trial court's rationale does not alter the outcome.

3. By the time of defendant's sentencing hearing, the definition had been amended to refer not to "any person," but rather to "any natural person." *See* 1997 Utah Laws ch. 103, § 1.

been perpetrated against the insurer. *See Westerman,* 945 P.2d at 698–99.

¶ 8 Acknowledging that "the result [was] troublesome," this court suggested that the Legislature "enact remedial legislation" to deal with any unintended effects of the *Westerman* decision. *Id.* at 699 & n. 5. In 1998 the Utah Legislature did just that, changing the definition of "victim" for purposes of restitution by incorporating a definition already within the sentencing statute instead of borrowing the definition used in the Rights of Crime Victims Act. *See* 1998 Utah Laws ch. 149, § 1. The new definition of "victim" is "any person whom the court determines has suffered pecuniary damages as a result of the defendant's criminal activities." Utah Code Ann. § 76–3–201(1)(e)(i) (1999). *See id.* § 76–3–201(4)(a)(i) ("For purposes of restitution, a victim has the meaning as defined in Subsection (1)(e)."). This amendment broadened the definition to include insurance companies and "effectively superseded the *Westerman* decision." *State v. Stirba,* 972 P.2d 918, 923 n. 4 (Utah Ct. App.1998).

¶ 9 The effective date of the amended statute is significant. The new definition of "victim" became effective May 4, 1998, the same day the Sentencing Order was signed by the trial court. If the amendment applies to this case, as the State contends, the trial court's order was entirely proper: Under the new definition, Met Life is a victim because it suffered pecuniary damages due to defendant's crime. *See id.;* Utah Code Ann. § 76–3–201(1)(e)(i) (1999). In contrast, under the old definition, Met Life could not be considered a victim because it is not a person against whom the crime was perpetrated. *See Westerman,* 945 P.2d at 699.

¶ 10 Both parties and the trial court attempted to resolve whether the new amendment applies in this case by considering whether defendant's sentence was final at the sentencing hearing, or if it became final only after being reduced to a written order signed by the trial court. By focusing on these two events, all seem to have largely overlooked a third important event, namely the date on which the crime occurred.

¶ 11 When the Legislature alters the penalty for a crime after a defendant has allegedly committed the crime but before sentencing, the new statute—the one in effect at the time of sentencing—is applied so long as "it does not raise a Constitutional question of being an ex post facto law by reason of increasing the punishment." *Belt v. Turner,* 25 Utah 2d 380, 483 P.2d 425, 425–26 (1971). However, if, as defendant claims here, the amendment increases the punishment, the sentence should be determined according to the law in effect on the date the crime was committed.[4] *See Smith v. Cook,* 803 P.2d 788, 792 n. 20 (Utah 1990).

> "Statutes are frequently adopted that change the nature, degree, or kind of penalty or punishment to be imposed for the commission of a criminal act. Thus, the mode or place of confinement of a prisoner, the length of imprisonment, or the time or method of execution may be altered by statute. Provisions of this kind are valid, except as they operate to increase or enhance punishment for crimes committed before their enactment, in which case they are invalid as ex post facto legislation."

*Belt,* 483 P.2d at 426 (quoting 21 Am.Jur.2d *Criminal Law* § 578 (1965)). Whether the new or old definition of "victim" should be applied turns principally on whether the

---

4. When an amendment that changes punishment for a crime is enacted after guilt is determined but before sentencing, whichever law is most favorable to the defendant should be applied. *See Smith v. Cook,* 803 P.2d 788, 792 & n. 20 (Utah 1990). If the punishment under the amendment is reduced, the amendment should be applied. *See Shelmidine v. Jones,* 550 P.2d 207, 211–12 (Utah 1976); *Belt,* 483 P.2d at 425–26. If the punishment is increased, the law as it existed at the time of the commission of the crime must be applied to avoid violating the ex post facto prohibition of Article I, Section 18, of the Utah Constitution and Article I, Section 10, of the United States Constitution. *See Dobbert v. Florida,* 432 U.S. 282, 292, 97 S.Ct. 2290, 2298, 53 L.Ed.2d 344 (1977); *Smith,* 803 P.2d at 792 n. 20. "The enigma is apparent.... The [rule] properly causes one court to apply the amendment retroactively and the other prospectively. Yet each appears to be correct." *People v. Stampler,* 115 Misc.2d 547, 454 N.Y.S.2d 411, 413 (N.Y.Crim.Ct.1982).

amended statute constitutes the application of prohibited ex post facto legislation.[5]

■ ¶ 12 To reiterate,

[a]n *ex post facto* law is one that " 'punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission; or which deprives one charged with a crime of any defense available according to the law at the time when the act was committed.' "

*Monson v. Carver*, 928 P.2d 1017, 1026 (Utah 1996) (quoting *Dobbert v. Florida*, 432 U.S. 282, 292, 97 S.Ct. 2290, 2298, 53 L.Ed.2d 344 (1977)) (additional citations omitted). Defendant's argument implicates the second clause of this definition when he contends he should not be required to pay restitution to Met Life and should only be required to pay a total of $2,554.41 to the victim. Defendant, in effect, argues that the amendment to section 76–3–201 increases his punishment because it allows the trial court to order him to pay Met Life a sum he believes he could not have been ordered to pay under the prior statutory scheme. While we agree an actual increase in permitted restitution would be an increase in punishment,[6] we disagree with defendant's statutory interpretation.

■ ¶ 13 In the present case, applying the amended restitution statute does not make the punishment more burdensome to defendant. The trial court decided $7,724.73 was the amount of economic harm done by defendant. The statute in effect at the time defendant committed the burglary allowed the court to award full restitution to the victim, including insured costs. *See Stirba*, 972 P.2d at 923 n. 4. " 'Restitution' means full, partial, or nominal payment for pecuniary damages

to a victim, including the accrual of interest from the time of sentencing, *insured damages,* and payment for expenses to a governmental entity for extradition or transportation and as further defined in Subsection (4)(c)." Utah Code Ann. § 76–3–201(1)(d) (1999) (emphasis added). The trial court, notwithstanding the prior statute's more restrictive definition of victim, was free to include in the restitution calculation the amount of the victim's insured losses, i.e., the amount Met Life had paid on the victim's behalf. The only practical limitation imposed was that restitution for insured losses had to be paid to the victim, not directly to the insurer.[7] *See Stirba*, 972 P.2d at 923 n. 4. Thus, while the amended definition of victim enlarged the class of persons and entities that defendant might be ordered to pay directly, the amendment did not increase the total amount of restitution he could be required to pay. *See People v. Stewart*, 926 P.2d 105, 108 (Ct.App.) (holding no ex post facto problem when amendment merely enlarges class entitled to share in restitution award but does not increase amount of restitution defendant must pay), *cert. denied*, No. 96SC265, Colo. LEXIS 553 (Colo.1996).

¶ 14 The same result was reached in *Stewart.* In that Colorado case, a statute defining "victim" very narrowly and excluding restitution payments to third parties not "immediately or directly aggrieved" was amended, broadening the definition of "victim" to include additional third parties harmed due to a contractual relationship with the immediate crime victim. *Id.* at 107. The amendment became effective after Stewart committed a theft and after he was found guilty of the crime, but before he was sentenced. *See*

---

5. While the parties did not focus on this issue, it is settled that appellate courts may affirm trial court decisions on any available grounds. *See Buehner Block Co. v. UWC Assocs.*, 752 P.2d 892, 895 (Utah 1988); *Otteson v. Department of Human Servs.*, 945 P.2d 170, 172 (Utah Ct.App. 1997) (per curiam).

6. While an order of restitution is intended to provide a remedy to the victim, it is also part of the punishment imposed upon the offender. *See United States v. Gilberg*, 75 F.3d 15, 21–22 (1st Cir.1996) (holding increase in restitution amount was increased punishment violative of ex post

facto doctrine); *State v. Woodward*, 989 P.2d 188, 190 (Colo.App.1999) (holding restitution is punitive, not remedial); *Spielman v. State*, 298 Md. 602, 471 A.2d 730, 734 (1984) (same).

7. Presumably, once the victim was paid restitution by the defendant for the full amount of harm, including the amount already paid by an insurer, the insurer would be reimbursed by the victim in accordance with the terms of the applicable insurance policy. The amended law merely saves a step by allowing restitution to go directly to the third party to whom it ultimately belongs. *See Stirba*, 972 P.2d at 923 n. 4.

*id.* The appellate court recognized that the total amount of restitution that could be awarded Stewart's victims was not increased by the amendment; the class of persons or entities that could be considered victims was merely enlarged. *See id.* at 108. The court held that because the defendant would be ordered to pay the same *amount* of restitution under either the old or new definition of victim, there was no increase in punishment, and no violation of the prohibition against ex post facto laws. *See id.*

¶ 15 Similarly, under either definition of "victim," the amount of restitution for which our defendant is responsible would be the same. Defendant could properly be required to pay $7,743.73, whether it all be given to the immediate crime victim or distributed between the immediate victim and the insurer. No additional punishment is inflicted on defendant if, under the amended statute, a portion of the same amount of restitution is merely paid directly to the insurer. Therefore, the trial court's use of the new definition of "victim" would not create an ex post facto problem. Indeed, so long as his total obligation—and therefore his punishment—is unchanged, whether defendant pays all of the restitution to the victim or pays some to the victim and some to the insurer would appear to be no real concern of his.

¶ 16 The only question remaining is a housekeeping one: Should the $7,743.73 which defendant was correctly ordered to pay be distributed as set out in the Sentencing Order or should we require that it all be paid to the victim? We hold the restitution should be distributed as ordered by the trial court. Given there is no problem under the doctrine prohibiting ex post facto laws, the amended definition of "victim" had taken effect when defendant's sentence became "fi-

nal," i.e., when the Sentencing Order was signed by the trial court. A sentence is not final when the court has orally sentenced a defendant but has yet to enter a written order. *See Hinkins v. Santi,* 25 Utah 2d 324, 481 P.2d 53, 54 (1971) (holding defendant's sentence must be in writing to be final); *State v. Wright,* 904 P.2d 1101, 1102 (Utah Ct.App.1995) ("[T]he oral statement from the court regarding defendant's sentence was not reduced to writing, and thus defendant's sentence was not entered until [the date it was reduced to writing and signed]."), *cert. denied,* 916 P.2d 909 (Utah 1996). Thus, it was not until May 4, 1998, when the trial court signed the order, that defendant's sentence became final.[8] And on that date, the definition of "victim" was broad enough to include an insurer.

■ ¶ 17 Defendant argues that the trial court is nonetheless bound by its statement at the restitution hearing, which took place over four months after the Sentencing Order was signed. At that hearing, the trial court, reconsidering the restitution award already ordered, stated: "If the effective date of the statute was before April 27th the Court would order restitution in the total amount [of $7,724.73]. If the effective date of the statute was after sentencing then the Court would go with the [$2,554.41]."

¶ 18 The trial court was clearly mistaken about the date the defendant's sentence became final when it referred to April 27, 1998 as the operative date. It also misperceived the extent of the substantive difference between the old and new versions of the statute. However, we evaluate the legality of the sentencing order actually signed, not the court's commentaries from the bench spread over a seven-month period.

---

8. We note the possibility that the prosecution could deliberately delay submitting orders, or the trial judge could delay signing them, to await some change in the law. If there were evidence that a trial court or a party intentionally delayed an order so an amendment could take effect, the result might well differ. *Cf. Belt v. Turner,* 25 Utah 2d 380, 483 P.2d 425, 427 (1971) (Henriod, J., dissenting) (indicating dissatisfaction with sentence that reduced defendant's punishment when he failed to appear for sentencing until after amendment took effect).

    In the present case, neither party alleges such conduct. Quite the contrary, it is evident from the record that everyone was uninformed regarding when the statutory amendment altering the definition of "victim" took effect and what it meant in practical terms. Contrary to any suggestion of willful delay, the sentencing order was reduced to writing, presented to the trial court, and signed, all in about a week.

## CONCLUSION

¶ 19 Defendant's restitution was not increased, but merely redirected, by the amendment changing the definition of "victim." Thus, no additional punishment within the meaning of the ex post facto prohibition was imposed. Given the trial court's determination, defendant would be required to pay the same restitution under either definition. Moreover, the Sentencing Order was final only when written and signed. The trial court's apportionment of restitution was appropriate because its order was signed the day the amendment to section 76–3–201 became effective.

¶ 20 Affirmed.

¶ 21 WE CONCUR: MICHAEL J. WILKINS, Presiding Judge, and JAMES Z. DAVIS, Judge.