2007 UT App 332

**STATE of Utah, Plaintiff and Appellee,**

v.

**Brian K. MILLER, Defendant and Appellant.**

**No. 20060646–CA.**

Court of Appeals of Utah.

Oct. 12, 2007.

---

Michael J. Petro, Provo, for Appellant.

Mark L. Shurtleff, atty. gen., and Brett J. DelPorto, asst. atty. gen., Salt Lake City, for Appellee.

Before Judges BILLINGS, McHUGH, and THORNE.

## OPINION

McHUGH, Judge:

¶ 1 Defendant Brian K. Miller challenges the trial court's order awarding restitution to Safeco Insurance Company (Safeco). We reverse.

## BACKGROUND

¶ 2 On October 31, 2003, Miller drove his vehicle through a red light and broadsided the vehicle of Sharane Haymond, who was attempting a left turn in the intersection. The collision severely injured Ms. Haymond and killed her seven-year-old daughter, Karlee Haymond. The police officers who responded to the accident observed that Miller appeared intoxicated and the officers administered a field sobriety test, which Miller failed. Miller then admitted to police that he had taken Oxycontin and other prescription drugs prior to the accident.[1] A subsequent toxicology test confirmed Miller's chemical impairment.

¶ 3 Miller's insurer, Unigard Insurance Company (Unigard), negotiated a settlement with Ms. Haymond's insurer, Safeco, to resolve Miller's civil liability for the accident. Unigard paid $50,000 to Mr. and Ms. Haymond for the wrongful death of Karlee Haymond. Unigard also paid Ms. Haymond $45,000 for her additional claims, and over $9000 for damages to Ms. Haymond's vehicle. Ms. Haymond's own insurer, Safeco, paid her

---

1. Miller also admitted that he had no prescription for any of the drugs he had consumed prior to the accident.

$25,000 in underinsured motorist coverage for her physical and emotional injuries, and $25,000 to Mr. and Ms. Haymond for the wrongful death of their daughter. Safeco also paid Ms. Haymond $10,000 in Personal Injury Protection (PIP) benefits for Karlee's and Ms. Haymond's medical expenses. In an email from a Safeco representative to a Unigard representative, in connection with the settlement negotiations between the carriers, Safeco's representative stated that Safeco "agreed to waive [its] PIP subrogation" from Unigard.

¶ 4 In addition to the Haymonds' civil claims, the State brought a criminal action against Miller for his role in the accident. The State charged Miller with automobile homicide, a second degree felony, *see* Utah Code Ann. § 76–5–207(3) (Supp.2007); possession or use of a controlled substance, a third degree felony, *see* Utah Code Ann. § 58–37–8(2)(a)(i), (b)(ii) (Supp.2007); and driving under the influence of alcohol or drugs, a class B misdemeanor, *see* Utah Code Ann. §§ 41–6a–502 (2005), –503 (Supp.2007).[2] In October of 2005 and after the preliminary hearing, Miller pleaded guilty to third degree felony automobile homicide, *see* Utah Code Ann. § 76–5–207(2), and attempted illegal possession or use of a controlled substance, a class A misdemeanor, *see* Utah Code Ann. § 58–37–8(2)(a)(i). The trial court sentenced Miller to thirty-six months of probation, 365 days in jail, and fined Miller a total of $1900.

¶ 5 The State then moved for a restitution hearing, which motion was granted. *See* Utah Code Ann. § 77–38a–302 (Supp.2007) (setting forth criteria for restitution). In anticipation of the hearing, Ms. Haymond filed a request for restitution. Safeco also sought $10,000 in restitution for the PIP benefits it paid to Ms. Haymond for medical expenses. At the May 4, 2006 restitution hearing, Ms. Haymond withdrew her request for restitution. The trial court then ruled that Safeco was entitled to restitution and ordered Miller to pay Safeco $10,000 as reim-

bursement for the PIP benefits. Miller now appeals the restitution order.

## ISSUE AND STANDARDS OF REVIEW

¶ 6 Miller claims that the trial court erred by awarding restitution to Safeco for its PIP payments to Ms. Haymond. "We will not disturb a trial court's order of restitution unless the trial court exceeds the authority prescribed by law or abuses its discretion." *State v. Cabrera*, 2007 UT App 194, ¶ 6, 163 P.3d 707 (internal quotation marks omitted). Furthermore, "[w]hether a restitution [award] is proper ... depends solely upon interpretation of the governing statute, and the trial court's interpretation of a statute presents a question of law, which we review for correctness." *State v. Gibson*, 2006 UT App 490, ¶ 6, 153 P.3d 771 (second and third alterations in original) (internal quotation marks omitted).[3]

## ANALYSIS

¶ 7 Miller contends that the trial court's restitution order was erroneous because, under Utah's no-fault automobile insurance statutes, Safeco could not recover the PIP benefits it paid to Ms. Haymond in a civil action. In response, the State argues that limitations on civil damage awards, such as those imposed by the no-fault insurance statutes, should not rigidly limit restitution awards in criminal cases. Instead, the State suggests that the trial court could consider whether an order of restitution in this instance would further the legislative goals of the Crime Victims Restitution Act (the Act), *see* Utah Code Ann. §§ 77–38a–101 to –502 (2003 & Supp.2007). We agree with Miller and conclude that, under the plain language of the Act, Safeco was not entitled to restitution of PIP benefits.

¶ 8 Utah's restitution statute states that a trial "court shall order that the defendant make restitution to victims of crime" when "a defendant is convicted of criminal activity

---

2. We cite to the current versions of the criminal statutes under which Miller was charged as a convenience to the reader and because recent amendments to these statutes have been nonsubstantive.

3. We do not reach Miller's additional arguments on appeal because we determine that his claim that the trial court's restitution order was erroneous as a matter of law is dispositive.

*that has resulted in pecuniary damages."* *Id.* § 77–38a–302(1) (emphasis added). Until recently, the Act defined pecuniary damages as "all special damages, but not general damages, which a person could recover *against the defendant* in a civil action arising out of the facts or events constituting the defendant's criminal activities." *Id.* § 77–38a–102(6) (2003) (amended 2005) (emphasis added). However, the legislature amended this definition in 2005. *See* Act of May 2, 2005, ch. 96, sec. 3, § 77–38a–102, 2005 Utah Laws 653, 654. The current version of the statute defines pecuniary damages as "all demonstrable economic injury, whether or not yet incurred, which a person could recover in a civil action arising out of the facts or events constituting the defendant's criminal activities." Utah Code Ann. § 77–38a–102(6) (Supp.2007). Thus, the 2005 amendment added the phrase "all demonstrable economic injury" and deleted the phrase "against the defendant." *Compare id.* § 77–38a–102(6) (2003) (amended 2005), *with id.* § 77–38a–102(6) (Supp.2007).

¶ 9 Miller committed his crimes in 2003 and pleaded guilty in October of 2005. The restitution hearing occurred in May of 2006. Thus, the amendment to the definition of pecuniary damages occurred after Miller's criminal acts but before Miller pleaded guilty and received his sentence. The timing of the 2005 amendment is significant because

> [w]hen the Legislature alters the penalty for a crime after a defendant has allegedly committed the crime but before sentencing, the new statute—the one in effect at the time of sentencing—is applied so long as "it does not raise a Constitutional question of being an ex post facto law by reason of increasing the punishment."

*State v. Dominguez,* 1999 UT App 343, ¶ 11, 992 P.2d 995 (quoting *Belt v. Turner,* 25 Utah 2d 380, 483 P.2d 425, 426 (1971)).

¶ 10 Because neither party addressed the effect of the amendment to Utah Code section 77–38a–102(6), we requested supplemental briefing on the issue. In that supplemen-

tal briefing, both parties contend that the amendment to the definition of pecuniary damages does not raise an ex post facto concern. As such, we shall assume, without deciding, that the 2005 amendment is not an ex post facto law, and we will apply the current definition of pecuniary damages.[4]

¶ 11 The current version of the Act defines pecuniary damages as "all demonstrable economic injury, whether or not yet incurred, which a person could recover in a civil action arising out of the facts or events constituting the defendant's criminal activities." Utah Code Ann. § 77–38a–102(6). We therefore must determine whether the restitution sought by Safeco constitutes pecuniary damages that are recoverable in a civil action, *see id.,* despite Utah's no-fault insurance statutes.

### I. Recovery of PIP Benefits

¶ 12 According to Utah's no-fault automobile insurance statutes, an insurer's right to bring a cause of action for alleged damages and personal injuries arising out of an automobile accident is limited. *See* Utah Code Ann. § 31A–22–309(1)(a) (2005) (providing that "[a] person who has ... direct benefit coverage under a policy which includes personal injury protection may not maintain a cause of action for general damages arising out of personal injuries alleged to have been caused by an automobile accident" except in specifically enumerated circumstances).

¶ 13 By expressly limiting an insured, injured party from suing to recover general damages resulting from an accident, the no-fault insurance statute also effectively protects the liable wrongdoer from such claims. Indeed, the Utah Supreme Court has stated that "the no-fault insurance act confers two privileges: first, [the insured party] is granted partial tort immunity; second, [the insured party] is not personally liable for the [PIP] benefits." *Allstate Ins. Co. v. Ivie,* 606 P.2d 1197, 1200 (Utah 1980) (interpreting Utah's prior no-fault insurance statute, *see* Utah Code Ann. § 31–41–9 (1974) (repealed

---

4. We express serious concern, however, over the ex post facto implications of the amendment under the facts of this case. The deletion of the phrase "against the defendant" may impact the scope of Miller's liability for restitution, but because the issue was not raised we save this determination for another day.

and renumbered 1985)). The *Ivie* court explained that: "Under the Utah No–Fault Insurance Act, the tort-feasor who has the required security, is not personally liable to the injured person for payment of [PIP payments]; therefore, *the tort-feasor has no personal legal obligation to reimburse the injured party's insurer.*" *Ivie,* 606 P.2d at 1202–03 (emphasis added) (citation omitted). More recently, the Utah Supreme Court reaffirmed that under Utah's revised no-fault insurance statutes, "tortfeasors who maintain no-fault insurance on their vehicles are not personally liable for PIP benefits and are immune from suit for PIP-type claims." *Bear River Mut. Ins. Co. v. Wall,* 1999 UT 33, ¶ 10, 978 P.2d 460 (upholding *Ivie* and discussing renumbered version of Utah's no-fault insurance statutes).[5] Consequently, Safeco could not have recovered its PIP payments from Miller in a civil action. Therefore, a claim against Miller cannot justify the inclusion of those PIP benefits in an order of restitution under the definition of pecuniary damages in the Act. *See* Utah Code Ann. § 77–38a–102(6) (defining pecuniary damages as all economic injury "a person could recover in a civil action"); *see also id.* § 77–38a–302(1) (limiting restitution to pecuniary damages).

¶ 14 The no-fault insurance statutes provide only one method for insurers who have paid PIP benefits—such as Safeco—to seek reimbursement.

> [W]here the insured under the policy is or would be held legally liable for the personal injuries sustained by any person to whom benefits required under personal injury protection have been paid by another insurer, ... *the insurer of the person who would be held legally liable shall reimburse the other insurer for the payment,* but not in excess of the amount of damages recoverable; and ... *the issue of liability for that reimbursement and its amount shall be decided by mandatory, binding arbitration between the insurers.*

Utah Code Ann. § 31A–22–309(6)(a)–(b) (emphasis added). In other words, "the no-fault insurer [has] a limited, equitable right to seek reimbursement in arbitration proceeding[s] against the liability insurer." *Ivie,* 606 P.2d at 1202; *see also Regal Ins. Co. v. Canal Ins. Co.,* 2004 UT 19, ¶ 16, 93 P.3d 99 ("[T]he law requires the tortfeasor's PIP insurer to reimburse any other insurer that has paid PIP benefits to the accident victim and provides that binding arbitration is the exclusive vehicle for enforcing that reimbursement obligation." (emphasis omitted)). Thus, a no-fault insurer's only forum for recoupment of PIP benefits is arbitration with the other insurance provider.

¶ 15 To the extent that Safeco has a right to recover the PIP payments, its claim of reimbursement is against Unigard, not Miller. Although the current version of the Act has deleted the language "from the defendant," it still requires that the pecuniary damages be recoverable "in a civil action." Utah Code Ann. § 77–38a–102(6). The exclusive forum for reimbursement of PIP payments is an arbitration proceeding between the insurers. *See* Utah Code Ann. § 31A–22–309(6). Thus, we must decide whether such an arbitration proceeding is a civil action that could justify the inclusion of the PIP payments in a restitution order.

¶ 16 According to rule 3 of the Utah Rules of Civil Procedure, "[a] civil action is commenced (1) by filing a complaint with the court, or (2) by service of a summons together with a copy of the complaint." Utah R. Civ. P. 3. Arbitration, on the other hand, does not require the filing of a complaint and is not conducted in a court of this State. *See, e.g.,* Utah Code Ann. § 78–31a–110 (2002) (stating that arbitration is initiated by giving other parties notice); *id.* § 78–31a–112 (2002) (governing appointment of arbitrators).

---

5. The only exception to the no-fault insurance statutes' general prohibition on claims brought by insured accident victims is that such "victims may still bring claims against tortfeasors for pain and suffering, as well as for economic losses, in excess of the statutory PIP limit." *Bear River Mut. Ins. Co. v. Wall,* 1999 UT 33, ¶ 10, 978 P.2d 460; *see also* Utah Code Ann. § 31A–22– 309(1)(a) (2005) (enumerating types of claims that insured accident victim may maintain despite having PIP coverage). This exception to the no-fault insurance statutes is inapplicable here, however, because any right to recover belongs to Ms. Haymond as the accident victim and not to Safeco as her insurer.

Consequently, Safeco could not recover its PIP payments from Unigard in a civil action, and therefore, the trial court's restitution award was improper.[6]

## II. The State's Additional Arguments

¶ 17 Finally, the State relies on *State v. Gibson*, 2006 UT App 490, 153 P.3d 771, and *State v. Twitchell*, 832 P.2d 866 (Utah Ct. App.1992), in support of its contention that the trial court's restitution order was proper. Such reliance is misplaced.

¶ 18 The State cites *Gibson* for the proposition that civil damage awards "do not create rigid guidelines that courts must follow in awarding restitution." In *Gibson*, the defendant challenged a restitution order on the grounds that it was for an amount greater than that recovered in a civil action arising out of the same facts. *See Gibson*, 2006 UT App 490, ¶ 7, 153 P.3d 771. This court rejected that argument, reasoning that "[b]ecause the civil judgment covered a smaller time period than the restitution award, it did not address the same 'facts or events constituting [Gibson's] criminal activities.' Therefore, the restitution award did not exceed any limits allegedly set by the plain language of the statute." *Id.* ¶ 8 (quoting Utah Code Ann. § 77–38a–102(6) (2003) (amended 2005)). Here, Safeco could not maintain a civil action against Miller or Unigard for any part of the PIP benefits it paid to Ms. Haymond. Thus, unlike *Gibson*, a restitution order that incorporates those PIP payments would exceed the express limits set by the plain language of the statute.

¶ 19 Likewise, our decision today is consistent with *Twitchell*, where we held that the trial court had not exceeded its authority prescribed by law in ordering restitution equal to the insurance premiums the defendant had obtained by deception, rather than in an amount limited to the actual loss to the victims.[7] *See Twitchell*, 832 P.2d at 870. There, we expressly recognized that " 'the first question before a sentencing court is what restitution, if any[,] will best serve rehabilitative and deterrent purposes?' and *the second is 'would that be recoverable as special damages if this were a civil case?' " Id.* at 869 (emphasis added) (quoting *State v. Dillon*, 292 Or. 172, 637 P.2d 602, 607 (1981)). The State correctly asserts that restitution may serve a variety of goals, including rehabilitation and deterrence. Even if such purposes would be advanced by restitution, however, the trial court must also consider whether the subject damages would have been recoverable " 'if this were a civil case.' " *Id.* (quoting *Dillon*, 637 P.2d at 607). Because that second question must be answered in the negative with respect to the PIP benefits paid by Safeco, those damages do not fall within the definition of pecuniary damages in the Act and cannot be included in the restitution award.

¶ 20 The cases from other jurisdictions that the State relied on do not change our analysis. *See, e.g., People v. Bernal*, 101 Cal.App.4th 155, 123 Cal.Rptr.2d 622, 626–28, 631–32 (2002); *People v. Rogers*, 20 P.3d 1238, 1240 (Colo.Ct.App.2000); *State v. Kirby*, 818 So.2d 689, 690–91 (Fla.Dist.Ct.App. 2002), *aff'd*, 863 So.2d 238 (Fla.2003); *State v. Applegate*, 266 Kan. 1072, 976 P.2d 936, 938–40 (1999); *People v. Gourd*, 200 Mich.App. 493, 504 N.W.2d 699, 700 (1993). Each of these decisions was based upon the express language of the restitution statute at issue. Indeed, *People v. Rogers*, 20 P.3d 1238 (Colo. Ct.App.2000), highlights the importance of the precise statutory language by noting that PIP benefits could be recovered under the general restitution statute but not under the restitution statute applicable to juveniles.

The juvenile restitution statute specifically required payment to insurers deriving their right of recovery from the rights of

---

6. Miller claims that Safeco waived any right to recover the PIP payments by its representative's statement in the email to Unigard that Safeco "agreed to waive [its] PIP subrogation." Because we hold that, even if not waived, Safeco's only venue for the recovery of PIP benefits is an arbitration proceeding and not a civil action as required by the Act, we need not resolve the issue of whether Safeco's email constituted a valid waiver.

7. This court affirmed, holding that the trial court had correctly concluded that the higher amount could have been recovered in a civil conversion action against the defendant. *See State v. Twitchell*, 832 P.2d 866, 870 (Utah Ct.App.1992).

the victim. Thus, as the victim in that case would have had no right of recovery under ... the No-Fault Act, the insurer had no subrogation rights for repayment of PIP benefits. As a result, the restitution statute provided no basis for recovery of funds by that insurer.

*Id.* at 1240. Likewise, the fact that Safeco could not recover its PIP payments "in a civil action," Utah Code Ann. § 77–38a–102(6) (Supp.2007), is fatal to the inclusion of those payments in the restitution order.

### CONCLUSION

¶ 21 A restitution order may include pecuniary damages incurred by a victim of the subject crime. *See id.* § 77–38a–302(1). Pecuniary damages are "all demonstrable economic injury, whether or not yet incurred, which a person could recover in a civil action arising out of the facts or events constituting the defendant's criminal activities." *Id.* § 77–38a–102(6). Because Safeco could not recover its PIP benefits in a civil action, the benefits do not constitute pecuniary damages, and thus, Safeco cannot recover the PIP benefits through restitution. The trial court therefore erred by awarding Safeco restitution for the PIP benefits paid to Ms. Haymond.

¶ 22 Reversed.

¶ 23 WE CONCUR: JUDITH M. BILLINGS and WILLIAM A. THORNE JR., Judges.