The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Clifford STEWART, Defendant–Appellant.

No. 94CA1182.

Colorado Court of Appeals, Div. I.

Jan. 25, 1996.

As Modified on Denial of Rehearing March 28, 1996.

Certiorari Denied Oct. 21, 1996.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, Roger G. Billotte, Assistant Attorney General, Denver, for Plaintiff–Appellee.

W. Michael Franklin, Colorado Springs, for Defendant–Appellant.

Opinion by Judge ROTHENBERG.

Defendant, Clifford Stewart, appeals from the trial court's order of restitution entered as part of defendant's sentence to probation for theft over $10,000. We affirm.

Defendant was the president of Western Hydrocarbons Development Corporation. According to the prosecution's evidence, defendant ordered over $1.2 million worth of butane gas on behalf of his corporation on credit from Petro–Lewis Corporation. Defendant then resold it to another party, receiving payment which defendant misappropriated for his personal use.

Defendant was charged with theft from the following named victims: (1) Western Hydrocarbons and/or Jack Doyle, vice-president of Western Hydrocarbons; and (2) Petro–Lewis Corporation. Following a trial in 1990, the jury found the defendant guilty of theft as to victims Western Hydrocarbons and/or Jack Doyle but acquitted him as to Petro–Lewis.

In August 1990, the court placed defendant on probation with the amount of restitution to be determined at a future date. In June 1994, following defendant's unsuccessful appeal of his conviction, *People v. Stewart*, (Colo.App. No. 90CA1694, December 24, 1992) (not selected for official publication), the trial court conducted a restitution hearing and, in accordance with § 16–11–204.5(4), C.R.S. (1986 Repl.Vol. 8A), the then applicable restitution statute, ordered him to pay over $2 million (the amount owed plus interest) in restitution to Petro–Lewis at the rate

of $1,000 per month. Defendant now appeals from that restitution order.

## I.

Defendant contends that the trial court erred in directing restitution payments to be made to Petro–Lewis. Specifically, he asserts that, because the conduct constituting the basis of his offenses occurred between January 1984 and January 1985, the trial court's application of § 16–11–204.5(4) violated his constitutional protection against *ex post facto* legislation. We disagree.

### A.

Initially, we reject the People's assertion that defendant abandoned this claim in the trial court.

■ At one of the restitution hearings on November 12, 1993, defendant's counsel specifically argued to the court that:

[The prosecutor] is trying to apply an ex post facto law to Mr. Stewart at this time. You cannot use that Subsection 4 [the amended statute] because it was not enacted during the time period in which this crime was committed, and application of that subsection is an ex post facto law.

Thus, defendant raised the issue.

■ Nor are we persuaded that defendant waived his argument by agreeing to restitution. At the restitution hearing on April 15, 1994, the trial court stated that it "gave [defendant] probation instead of prison so that he could pay restitution. If the restitution goes away, prison is the option...."

Under these circumstances, the defendant did not waive his right to appeal the terms under which he was to pay restitution. *See People v. Brockelman,* 916 P.2d 592 (Colo. 1995) (by accepting court's offer of probation rather than incarceration, defendant did not waive right to object to terms of restitution).

### B.

The restitution statute in effect at the time defendant committed these offenses provided, in pertinent part:

As a condition of every sentence to probation, the court shall provide that the defendant make restitution to the victim of his conduct for the actual damages which were sustained.

Colo. Sess. Laws 1985, ch. 139, § 16–11–204.5.

The word "victim" was not defined in that statute but was narrowly construed in appellate decisions to refer to the party immediately and directly aggrieved by the criminal act, and not to include others who suffered loss because of some relationship, contractual or otherwise, to the directly aggrieved party. *See People v. King,* 648 P.2d 173 (Colo.App. 1982); *People v. Catron,* 678 P.2d 1 (Colo. App.1983) (decedent's minor children were not "victims" within meaning of restitution statute).

However, the statute was amended in 1985. Section 16–11–204.5(4), C.R.S. (1986 Repl.Vol. 8A) now defines the word "victim" more broadly, stating that:

Victim, as used in this section, means the party immediately and directly aggrieved by a defendant, who is convicted of a criminal act and who is granted probation, *as well as others who have suffered losses because of a contractual relationship with such party* or because of liability under section 14–6–110, C.R.S .... (emphasis added).

The applicability of the amended statute is significant. Under the old statute, Petro–Lewis arguably could not be considered a victim because it was not the party immediately and directly aggrieved by defendant's theft. *See People v. Deadmond,* 683 P.2d 763 (Colo.1984) (construing old restitution statute). However, under the language of the amended statute, Petro–Lewis is a victim because it suffered losses based upon its contractual relationship with Western Hydrocarbons. Hence, resolution of this issue turns on whether use of the amended statute constitutes application of an *ex post facto* law.

Colo. Const. art. II, § 11 provides:

No ex post facto law, nor law impairing the obligations of contracts, or retrospective in its operation, or making any irrevocable grant of special privileges, franchises or

immunities, shall be passed by the general assembly.

*See* U.S. Const. art. I, § 10.

■ The purpose underlying the prohibition against *ex post facto* legislation is to provide fair warning to individuals of the scope of their punishment and liability so that they may rely upon the meaning of the statutes until they have been explicitly revised. In other words, it requires that persons be given fair notice of the penalties which government may impose on those who violate the laws. *People v. Zapotocky,* 869 P.2d 1234 (Colo.1994).

■ Two elements must be present for a criminal statute to be considered an *ex post facto* law. It must apply to events occurring before its enactment, and it must disadvantage the offender affected by it. *Gasper v. Gunter,* 851 P.2d 912 (Colo.1993).

Thus, in *People v. Stead,* 845 P.2d 1156 (Colo.1993), the supreme court held that since the drug offense at issue had been committed before the effective date of the drug offender surcharge statute, that statute could not be applied to the defendant without violating the *ex post facto* prohibition. This was because a retroactive application of the statute would make punishment for defendant's crime more onerous after its commission. *See People v. Salas,* 902 P.2d 398 (Colo.App.1994) (retroactive application of the statutory sex offender surcharge violated *ex post facto* prohibition).

■ In contrast, here, application of the amended restitution statute does not subject defendant to criminal liability for an act that was innocent when committed, or deprive him of a previously available defense. Nor does defendant point to any defenses impaired as a result of the amended statute.

The remaining issue then is whether § 16–11–204.5(4) of the statute, which expanded the definition of victim, makes the defendant's punishment more burdensome. *See People v. Zapotocky, supra.* We conclude that it does not.

Importantly, the statute in effect at the time defendant committed these offenses also required the court to order restitution as a condition of probation. As relevant here, the only change created by the amendment was to enlarge the class of persons or entities whom defendant might be ordered to pay. It did not affect the amount of restitution due or otherwise disadvantage defendant by extending or enlarging his original sentence.

We therefore reject defendant's argument that he had no way to foresee that, if he took funds belonging to Western Hydrocarbons, he could be liable for damages incurred by Petro–Lewis. To the contrary, we conclude that defendant had fair notice restitution was a condition of probation. Thus, the amended restitution statute did not substantially alter the consequences attached to defendant's conduct.

In summary, we hold that no additional punishment within the meaning of the *ex post facto* prohibition was inflicted upon defendant by the trial court's application of the 1985 amendment at his 1994 restitution hearing. Hence, no violation of the *ex post facto* clause of the constitution resulted thereby.

## II.

We also reject defendant's related argument that § 16–11–204.5, as it existed after the 1985 amendment, did not warrant payment of restitution to Petro–Lewis.

■ Payment of restitution is authorized as to the victim of a defendant's conduct and only for the actual pecuniary loss sustained as a direct result of the defendant's conduct. *People v. Miller,* 830 P.2d 1092 (Colo.App. 1991). However, a criminal conviction establishing the defendant's culpability is not required in order to impose restitution. *People v. Borquez,* 814 P.2d 382 (Colo.1991); *People v. Quinonez,* 735 P.2d 159 (Colo.1987).

■ Here, defendant diverted monies paid to Western Hydrocarbons and owed to Petro–Lewis. Thus, Petro–Lewis was the ultimate victim of defendant's theft against Western Hydrocarbons and it suffered actual pecuniary loss of over $1.2 million plus interest.

### III.

Defendant next argues that the trial court failed to consider his ability to pay and therefore erred in ordering him to pay $2 million dollars restitution to Petro–Lewis. Again, we disagree.

Section 16–11–204.5(1), C.R.S. (1986 Repl. Vol. 8A) states:

> The amount of such restitution shall be based on the actual, pecuniary damages sustained by the victim, the ability of the defendant to pay, and the defendant's obligations to support his dependents and to meet other family obligations. The court shall fix the manner and time of performance.

■ At the restitution hearing in June 1994, the defendant testified regarding his household income including his wife's income, his earning expectancy, and his living expenses. He urged the court to order restitution of no more than $10,000 at the rate of $100 per month. However, the trial court found that he had the ability to earn $2500 per month and to make monthly payments of $1000 per month during the period of his probation. *See People v. Martinez,* 844 P.2d 1203 (Colo.App.1992) (There is no limitation on the duration of a term of probation).

■ Since there is record support for these findings, we will not disturb them on appeal. *See People v. Quinonez, supra.*

### IV.

■ We also reject defendant's argument that the trial court erred in including interest within his obligation to pay restitution. A similar argument was rejected by the supreme court in *Valenzuela v. People,* 893 P.2d 97 (Colo.1995) (defendant could be charged interest as part of restitution for fraudulently obtaining food stamp and Aid to Families with Dependent Children benefits). *See also People v. Acosta,* 860 P.2d 1376, 1383 (Colo.App.1993) (under appropriate circumstances, a victim's loss of use of money can be "pecuniary damage" under restitution statute and justify award of interest).

### V.

Defendant's final contention is that the trial court erred in not offsetting his settlement agreement with Petro–Lewis against his obligation to pay restitution. Given the record before us, we disagree.

■ Restitution is part of the criminal sentence rather than a debt between the defendant and his victim. *People v. Milne,* 690 P.2d 829 (Colo.1984). Therefore, the agreement entered into between defendant and Petro–Lewis did not prevent the trial court from entering a restitution order.

In *People v. Acosta, supra,* 860 P.2d at 1382, a division of this court considered the effect of a prior settlement agreement between defendant and the victim and stated that:

> [I]n those instances in which a civil claim has been asserted against the defendant and a settlement reached prior to the time that the criminal court considers the issue of restitution, that court must take into consideration any amounts which have been, or will be, received by the victim from, or on behalf of, the defendant. Under the statute, the court must first determine the total amount of the victim's actual, pecuniary damages and then subtract from that amount any proceeds attributable to those damages received by the victim from the settlement of the civil claim. The order of restitution should be limited to this difference.

■ Here, although there was evidence of a settlement agreement, the record is devoid of evidence that defendant actually paid any specific amount to Petro–Lewis. Thus, defendant was not entitled to an offset against the $2 million dollars in restitution. However, defendant's restitution obligation is continuing and, if the defendant presents such evidence to the court at a later time, the trial court should award him credit as required by *People v. Acosta, supra.*

The order is affirmed.

METZGER and CRISWELL, JJ., concur.