**The PEOPLE of the State of Colorado,**
**Plaintiff–Appellee,**

v.

**Edwin A. WOODWARD, Defendant–**
**Appellant.**

**No. 97CA1889.**

Colorado Court of Appeals,
Div. II.

April 15, 1999.

As Modified on Denial of Rehearing
June 17, 1999.

Certiorari Granted Nov. 22, 1999.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Peter J. Cannici, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Forrest W. Lewis, P.C., Forrest W. Lewis, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge CRISWELL.

Defendant, Edwin A. Woodward, appeals the trial court's order resentencing him to probation and ordering him to pay restitution. He also appeals the trial court's order denying his motion to correct an illegal sentence. We vacate the sentence and remand with directions to discharge defendant from probation.

Defendant's sentencing history is a long one.

From June 1982 until October 1982, while employed to perform accounting services for Snowmass Coal Co. (Snowmass), defendant embezzled funds from his employer, and an eight-count information charging him with this theft was filed in 1983. Later, all counts were merged into one which charged defendant with stealing some $171,000. Defendant pled guilty.

Based on this plea, in 1985 defendant was placed on probation for a period of 12 years, and he was ordered to comply with a restitution plan whereby he was required to sell certain real estate owned by him, pay the proceeds to Snowmass, and, thereafter, exe-

cute a promissory note payable to Snowmass and make monthly payments in accordance with that note. However, defendant was unable to sell the property, and the mortgageholder foreclosed. To this extent at least, defendant failed to comply with this order of restitution. In the meantime, Snowmass was reimbursed for all of its losses, except for some $23,000, by its two insurers, and they instituted suit against defendant. One suit was settled by defendant's execution of a promissory note payable to that insurer for $100,0000. The other insurer abandoned its action.

In 1988, a motion to revoke defendant's probation, based solely on his failure to pay restitution, was filed. Defendant admitted his failure to comply with the original plan of restitution, the court revoked his probation, and he was sentenced to incarceration for 12 years. This sentence was imposed in spite of a presentence report that recommended that defendant be readmitted to probation and ordered to pay restitution to Snowmass in the amount of only $23,208, representing the amount of that victim's actual loss.

Defendant appealed from the sentence imposed, arguing that "revocation of his probation was error as the trial court made no finding that he had the ability to pay the restitution at the time payment was due and that, in light of the totality of the circumstances, revocation was fundamentally unfair." A division of this court agreed with these assertions. *People v. Woodward,* (Colo.App. No. 89CA0588, Aug. 16, 1990) (not selected for official publication). Hence, the cause was remanded to the trial court "for determination of defendant's ability to pay the ordered restitution and entry of an order consistent with that determination."

However, on remand, the trial court did not comply with this court's remand order. Rather, without making any determination of defendant's ability to pay, the court resentenced defendant to probation for a period of 16 years and ordered that he pay restitution in the amount of $144,645.63, representing the original loss of some $171,000, less the amount he had already paid. At this point, then, defendant had already paid more than Snowmass itself had sustained in actual loss-

es. Presumably, therefore, all of the amounts that he was thereafter required to pay were to be paid to the insurers. Defendant took no appeal from the imposition of that new sentence.

In 1995, however, the People filed another petition to revoke defendant's probation, alleging that he had again failed to comply with the restitution ordered and that he still owed some $115,000. In response, defendant moved to vacate the most recent sentencing order, asserting that that order was illegal because the statute in effect at the time of his commission of the crime to which he had pled guilty did not authorize the restitution order adopted by the court in 1991.

The trial court denied defendant's motion, and based upon the amount of restitution defendant had paid while the People's request for revocation of probation and defendant's motion to vacate his sentence had been pending, found that defendant had the ability to pay $587 per month and resentenced him to probation for an additional 16 years, so that, under this order, he will serve a total of 26 years on probation. In addition, the court ordered him to pay that amount each month until the sum of $115,407.63 has been paid in full. This order required the payment to be made into the registry of the court to be disbursed by the clerk to the two insurers. It is from this order that defendant now appeals.

Before us, defendant argues that, given the circumstances presented, both the 1991 sentence to probation that defendant was most recently charged with violating and the court's most recent sentence imposed in 1997 are illegal sentences in that they require him to pay restitution to parties who, under the statute that was in effect at the time of his commission of the crime for which he was convicted, were not "victims" and, therefore, could not be the beneficiaries of a restitution order. We agree.

In 1982, at the time of the commission of the crime here, the applicable restitution statute, *see* Colo. Sess. Laws 1985, ch. 139, § 16–11–204.5, authorized a court, as a condition of every sentence to probation, to require the defendant to "make restitution to

the victim of his conduct for the actual damages which were sustained."

Under this statute, it was held that a "victim" was one who was "immediately and directly aggrieved by the criminal act, and not ... others who suffer loss because of some relationship, contractual or otherwise, to the directly aggrieved party." *People v. King*, 648 P.2d 173, 175 (Colo.App.1982). *See also People v. Deadmond*, 683 P.2d 763 (Colo.1984) (statute contemplates restitution only to direct victims of crimes, citing *People v. King* with approval).

■ Hence, under the prior statute, the court had no authority to order restitution to be paid to an insurer who had reimbursed the victim for the loss. *People v. King, supra. See also Cumhuriyet v. People*, 200 Colo. 466, 615 P.2d 724 (1980); *State v. Westerman*, 945 P.2d 695 (Utah App.1997) (reaching same conclusion, citing *People v. King* with approval); *State v. Gardiner*, 127 Idaho 156, 898 P.2d 615 (Idaho App.1995) (same). *Cf. People in Interest of P.J.N.*, 664 P.2d 245 (Colo.1983) (distinguishing *People v. King* because restitution statute applicable to juvenile offenders was broader than criminal restitution statute).

Further, the pertinent statute required that the amount of restitution be based upon "the actual, pecuniary damages sustained by the victim...."

In their argument before this court, the People have conceded that, under this version of the statute, the trial court's restitution orders "would arguably have been illegal because the insurance companies who reimbursed Snowmass Coal were not immediately and directly aggrieved by the defendant's theft." In addition, it might also reasonably be argued that, to the extent Snowmass was reimbursed by insurance, it had not sustained "actual, pecuniary damages."

In 1985, however, the statute was amended so as to include as a "victim" under that statute any party "who has suffered losses because of a contractual relationship" with the party who had been "immediately and directly aggrieved" by a defendant's conduct. *See* § 16–11–204.5(4), C.R.S.1998.

Under this amendment, then, Snowmass would be directly and immediately aggrieved by defendant's theft. Its insurers suffered their losses, however, only because of the contractual relationship between them and Snowmass, which required them to reimburse Snowmass, at least in part, for its direct losses.

Clearly, therefore, the present statute, if applicable, would authorize an order directing the payment to the insurers for their losses. The question is, however: In light of the fact that the present statute was not in effect at the time defendant committed the theft, may that statute validly be applied to him? *See* Colo. Const. art. I, § 10 (prohibiting *ex post facto* law). We conclude that it may not.

■ It is clear that, while restitution provides some remedy for the victim, an order of restitution is a part of the punishment imposed upon the offender. From this standpoint, it is punitive, not remedial. *People v. Shepard*, 989 P.2d 183 (Colo.App.1999).

Further, the amended statute authorizes the court to order a defendant to pay sums to a party to whom no payment could have been ordered under the statute before its amendment. As a result, because the direct victim can receive restitution only for "actual damages sustained" and no insurer was considered a victim under the prior statute, the amendment effects an increase in the *amount* of restitution that could, in the case of every insured loss, be ordered.

Numerous courts have held that similar amendments to restitution statutes, adopted between the date of offense and the date of sentencing, cannot be applied to the offender. Prohibitions against *ex post facto* laws prevent their application.

The case most nearly on point is *Spielman v. State*, 298 Md. 602, 471 A.2d 730 (1984). Prior to the events giving rise to that decision, the Maryland court had interpreted that state's statute as not allowing restitution to insurance companies. *Montgomery v. State*, 292 Md. 155, 438 A.2d 490 (1981). The pertinent statute was then amended to allow restitution "to a third party payor, such as

private insurance companies." The Maryland court rejected the state's assertion that the amendment was merely procedural, not substantive, and that it had merely changed the identity of the recipient, not the amount of restitution awardable. It noted that the amendment created a substantive right in insurers that did not previously exist and that, because the previous statute limited the restitution available to the victims' actual losses, allowing restitution to insurers increased the amount of restitution available.

Based on these considerations, the court concluded that, to apply the amended restitution statute to offenders who had committed offenses before its adoption, would constitute an unlawful *ex post facto* application of that statute. *See also Eichelberger v. State*, 323 Ark. 551, 916 S.W.2d 109 (1996) (improper to apply new restitution statute to juveniles committing offenses before adoption of statute).

Likewise, numerous federal courts of appeal have held that the 1990 amendment to the federal Victim and Witness Protection Act, 18 U.S.C. § 3663(a)(2) and (3) (1994) (VWPA), cannot be applied to defendants who committed offenses before the date of the adoption of that amendment.

In *Hughey v. United States*, 495 U.S. 411, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990), the Supreme Court had interpreted the original VWPA narrowly and had determined that federal courts could order restitution paid only to those persons who were the immediate victims of the crime of which a defendant was convicted. Even though that crime might have been only one of a series of incidents of similar nature, no other persons could be considered victims.

In response to this opinion, Congress amended the VWPA to provide that:

[A] victim of an offense that involves as an element a scheme, a conspiracy, or a pattern of criminal activity means any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern.

18 U.S.C. § 3663(a)(2)(1994).

With only a single exception, all of the federal courts of appeal that have passed upon the issue have concluded that this amendment cannot be applied to defendants convicted of crimes occurring prior to the effective date of those amendments. *See United States v. Edwards*, 162 F.3d 87 (3d Cir.1998); *United States v. Siegel*, 153 F.3d 1256 (11th Cir.1998); *United States v. Thompson*, 113 F.3d 13 (2d Cir.1997); *United States v. Gilberg*, 75 F.3d 15 (1st Cir. 1996); *United States v. DeSalvo*, 41 F.3d 505 (9th Cir.1994). *Contra United States v. Newman*, 144 F.3d 531 (7th Cir.1998).

Here, had the pertinent restitution statute not been amended, only Snowmass could have been considered a victim. And, Snowmass's actual pecuniary loss amounted to approximately $23,000. In contrast, under the amended statute, both Snowmass and its insurers are victims, and their collective losses totaled some $170,000.

■ The amended statute, if applied to defendant, would require him to pay some $150,000 more in restitution than he would have been required to pay under the prior statute. In our view, the application of this amended statute would constitute additional punishment. *See People v. Stead*, 845 P.2d 1156 (Colo.1993) (statute levying drug surcharge cannot be applied to drug offender who committed drug offense prior to statute's effective date). We conclude, therefore, that the application of the amended statute to defendant would result in an unlawful *ex post facto* application of that statute.

Further, we do not view the opinion in *People v. Stewart*, 926 P.2d 105 (Colo.App. 1996), as requiring a different result. In *Stewart*, the defendant was an officer of a corporation, who had ordered butane gas, on credit, from another party. Upon delivery of this gas, defendant sold it to a third party and embezzled the proceeds. An information was filed charging him with theft both from the seller of the gas and from defendant's employer in whose name the gas had been ordered. However, he was convicted only of theft from his employer.

The *Stewart* court concluded that the seller could "arguably" not be considered a victim under the original statute, but it concluded that the seller's loss resulted from its

contractual relationship with the employer. *People v. Stewart, supra,* 926 P.2d at 107. Nevertheless, it concluded that, under either statute, defendant would be liable for the same amount, depending only upon the identity of the direct victim of the theft. If the seller was the direct victim, the amount would be payable to it; if it was the defendant's employer that was the direct victim, as the jury found, restitution would be payable to it. *See People v. Milne,* 690 P.2d 829 (Colo.1984) (purchaser of the stock from unlicensed worker is direct victim).

In *either* case, however, the *amount* due in *Stewart* would have been the *same;* it was only the identity of the victim that would have been changed. Hence, because the amount of restitution would have been the same whether awarded under the original or the amended statute, the division concluded that no *ex post facto* problem was presented.

That, of course, is not true in this case. As noted, the new statute would authorize an order of restitution that would require defendant to pay about $150,000 more than he could have been ordered to pay under the previous statute.

Finally, we recognize that, in *People v. Phillips,* 732 P.2d 1226 (Colo.App.1986), a division of this court upheld an order of restitution compelling payment to an insurance carrier based upon the amended statute, although the statute became effective only after the commission of the offense in that case. However, there is no indication that the division considered, and its opinion certainly does not address, the *ex post facto* issue which we consider here.

We conclude, therefore, that the court's order for payment of restitution to Snowmass' insurers was an improper *ex post facto* application of § 16–11–204.5 and that the sentence was, to this extent, illegal.

Moreover, it is evident that the extended term of probation imposed upon defendant was based solely upon the sentencing court's finding with respect to defendant's ability to pay and the time it would have taken him to pay the remaining $115,000 in restitution. Hence, defendant's entire present sentence must be vacated.

Further, because defendant's prior probation was revoked and the court's 1991 sentence was imposed solely because defendant had not complied with the court's order of restitution that we have concluded was improper, there exists no basis to extend defendant's period of probation beyond the terminal date of the first period of probation, which ended in 1997. The court should, upon remand, discharge defendant from probation.

The sentence imposed upon defendant is vacated, and the cause is remanded to the trial court with directions to discharge defendant from probation.

Judge PLANK and Judge KAPELKE concur.