**The PEOPLE of the State of Colorado,
Plaintiff–Appellee,**

v.

**Michael GHOLSTON, Defendant–
Appellant.**

No. 98CA0952.

Colorado Court of Appeals,
Div. V.

May 11, 2000.

Rehearing Denied Oct. 26, 2000.

Certiorari Denied July 2, 2001.

Ken Salazar, Attorney General, Jerry N. Jones, Special Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Richard E. Mishkin, P.C., Richard E. Mishkin, Lisa A. Vanderhoof, Lakewood, Colorado, for Defendant–Appellant.

Opinion by Judge ROTHENBERG.

Defendant, Michael Gholston, appeals the judgment of conviction entered on a jury verdict finding him guilty of one count of sexual assault on a child as part of a pattern of sexual abuse, three counts of sexual assault on a child by one in a position of trust, three counts of second degree sexual assault, and two counts of contributing to the delinquency of a minor. We affirm in part, reverse in part, and remand with directions.

The charges involved three victims, all of whom were minors at the time of the offenses. Seven counts arose from allegations that defendant sexually abused victim, D.P., between August 1989 and March 7, 1994, during which time the victim was under fifteen years of age.

The charges of contributing to the delinquency of a minor involved two other victims, C.C. and J.D. According to the prosecution's evidence, defendant provided marijuana to these victims.

## I. Limitations on Cross–Examination

Defendant first contends the trial court abused its discretion in limiting the defense's cross-examination of two of the victims by: (1) ruling that the rape shield statute precluded evidence that D.P. had sexually assaulted his younger half-brother, and (2) refusing, based on a lack of foundation, to allow evidence that C.C. had taken a breathalyzer test which had resulted in a zero blood alcohol level. We reject both arguments.

### A. Rape Shield Statute

■ The first issue is whether the trial court erred in applying the rape shield statute, § 18–3–407, C.R.S.1999, to bar evidence by the defense that D.P.—the victim of the sexual crimes—had himself committed a sexual assault on a younger sibling. Defendant contends that by precluding him from cross-examining D.P. on that issue, the trial court misapplied the rape shield statute and denied defendant the right to confront witnesses against him. We are not persuaded.

■ The purpose of rape shield statutes is:

> [T]o prevent a trial from shifting its focus away from the culpability of the accused towards the virtue and chastity of the victim ... [and to aid] in the fact finder's search for the truth by excluding evidence which might distract from legitimate issues involved in sexual assault cases. In other words, the purpose of the statute is to prevent trial of the victim instead of the accused.

*Commonwealth v. Fernsler,* 715 A.2d 435, 438 (Pa.Super.1998). *See People v. McKenna,* 196 Colo. 367, 372, 585 P.2d 275, 278 (1978) (rape shield statute was enacted to protect victims of sexual assaults from being "subjected to psychological or emotional abuse in court as the price of their cooperation in prosecuting sex offenders.").

Colorado's rape shield statute provides that evidence of specific instances of the victim's or a witness' prior or subsequent sexual conduct is presumed to be irrelevant unless it is evidence of sexual conduct with the defendant or other evidence of sexual intercourse offered to show that the act or acts charged were or were not committed by the defendant. Section 18–3–407(1); *In re People in Interest of K.N.,* 977 P.2d 868 (Colo.1999); *People v. Aldrich,* 849 P.2d 821 (Colo.App. 1992).

Under the statute, if neither of these exceptions is applicable and a defendant wishes to present evidence of a victim's prior or subsequent sexual conduct, the defendant

must file a written motion and an affidavit stating an offer of proof thirty days prior to trial, or later for good cause shown, after which the court must hold an *in camera* hearing to determine if the proposed evidence is relevant to a material issue in the pending case. Section 18–3–407(2); *In re People in Interest of K.N., supra; People v. Aldrich, supra.*

### 1.

■ Neither the General Assembly nor our courts have defined the term "prior or subsequent sexual conduct." However, it has been construed to include prior sexual assaults perpetrated on the victim. *People v. Aldrich, supra.* At issue here is whether "prior or subsequent sexual conduct" includes sexual assaults perpetrated *by* the victim. We conclude that it does.

■ Our goal in construing any statute is to ascertain and give effect to the intent of the General Assembly. To determine legislative intent, we look first to the language of the statute itself, giving the words and phrases used their plain and ordinary meaning. *People v. Drake,* 983 P.2d 135 (Colo.App. 1999).

■ When the statutory language is clear and unambiguous, it must be interpreted as written, without resort to interpretive rules of statutory construction. Courts may not impute their own meaning to otherwise clear statutory language, nor assume a legislative intent that would vary the words used by the General Assembly. *People v. Drake, supra.*

■ We presume that the General Assembly intends a just and reasonable result when it enacts a statute, and we will not follow a statutory construction that defeats the legislative intent or leads to an unreasonable or absurd result. *People v. Drake, supra.*

The plain and ordinary meaning of "sexual conduct" includes sexual assaults perpetrated by the victim, just as it has already been construed to include sexual assaults perpetrated on the victim. *See People v. Aldrich, supra.* Further, the rape shield statute was enacted to protect sexual assault victims from being "subjected to psychological or emotional abuse in court." *People v. McKenna, supra,* 196 Colo. at 372, 585 P.2d at 278. Because perpetrators may also be the victims of sexual assault, under the plain language employed by the General Assembly, we conclude that such perpetrators are within the statute's protection.

The same conclusion was reached by a Pennsylvania court in *Commonwealth v. Fernsler, supra.* There, the defendant was accused of sexual abuse by his son, who was himself accused of sexually assaulting a younger sibling. As in the present case, the victim did not accuse the defendant until he himself was under suspicion. However, unlike the present case, the victim in *Fernsler* was promised leniency in return for his testimony.

The court held that: (1) the victim's sexual assault was sexual conduct under Pennsylvania's rape shield statute; and (2) the procedure set out in the statute had to be followed before evidence of a sexual assault committed by the victim could be admitted at trial. However, under the circumstances presented there, the court also concluded that the policy behind the statute was outweighed by the defendant's Sixth Amendment right to confront the witnesses against him. *Commonwealth v. Fernsler, supra.*

Here, defendant knew before trial that he had been accused by D.P. of sexual abuse while D.P. was being interviewed by the police about D.P.'s own sexual assault on a younger sibling. We therefore conclude that the rape shield statute applied, that defendant was required to comply with its procedural requirements, and that his failure to do so justified the trial court's ruling barring testimony regarding D.P.'s own sexual conduct.

### 2.

■ Contrary to defendant's contention, he was not deprived of his constitutional right to confront the witnesses against him.

■ The right of a criminal defendant to confront witnesses against him is guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, and includes

the right to be given an opportunity for effective cross-examination. *Merritt v. People,* 842 P.2d 162, 167 (Colo.1992) ("[I]t is constitutional error to limit excessively a defendant's cross-examination of a witness regarding the witness' credibility, especially cross-examination concerning the witness' bias, prejudice, or motive for testifying."); *see Olden v. Kentucky,* 488 U.S. 227, 109 S.Ct. 480, 102 L.Ed.2d 513 (1988).

■ Nevertheless, the right to an opportunity for effective cross-examination does not mean the right to unlimited cross-examination. The trial court has wide latitude to place reasonable limits on cross-examination based on concerns about such factors as harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that would be repetitive or only marginally relevant. *See Olden v. Kentucky, supra; Merritt v. People, supra.*

■ Our supreme court has held that the rape shield statute does not deny defendants their confrontation rights because the statute permits evidence of the victim's sexual history to be admitted on a preliminary showing of relevance. There is no constitutional right to introduce irrelevant and highly inflammatory evidence. *People v. McKenna, supra.*

Here, as in *McKenna,* defendant's inability to confront the victim at trial resulted not from the statute itself, but from his failure to take advantage of the procedures it establishes; namely, his failure to follow the procedure set out in the statute or to show good cause why he should have been excused from following that procedure. *See People v. McKenna, supra.*

In addition, the trial court found the probative value of the evidence of D.P.'s sexual assault on his sibling was substantially outweighed by its prejudicial effect. *See* CRE 403.

■ Determinations under CRE 403 are within the sound discretion of the trial court, and will not be overturned absent an abuse of discretion. To show that the court abused its discretion, a party must show that the court's decision was manifestly arbitrary, unreasonable, or unfair. *See People v. Dunlap,* 975 P.2d 723 (Colo.1999).

Unlike the situation in *Commonwealth v. Fernsler, supra,* there was no evidence in this case that D.P. was offered, expected to receive, or did receive leniency or any other consideration in return for his testimony against defendant. To the contrary, D.P. was adjudicated a juvenile delinquent because he himself was the perpetrator of a sexual assault.

Defendant was allowed to cross-examine D.P. regarding the delay in reporting defendant's sexual abuse, and the jurors were informed that the information was first disclosed during D.P.'s interview with a law enforcement officer. The jurors also were informed, through the evidence and in defendant's closing arguments, that neither D.P. nor anyone else had come forward voluntarily to accuse the defendant of sexual abuse. Unlike the situation in *Commonwealth v. Fernsler, supra,* the jury here did not receive a false impression of D.P.'s credibility as a result of the trial court's limitation of defendant's cross-examination.

We therefore conclude that the trial court did not err in limiting the cross-examination of this victim under Colorado's rape shield statute, and that defendant's inability to cross-examine the victim regarding the victim's prior sexual assault did not violate defendant's right of confrontation. *See People v. McKenna, supra.*

### B. Evidence of Breath Test

■ Defendant also contends the trial court erred in refusing to allow him to cross-examine a victim, C.C., about the results of a breath test that the victim took after allegedly drinking alcohol at defendant's apartment. Again, we disagree.

Initially, we note that defendant was charged with contributing to the delinquency of C.C. and another victim by encouraging them to possess marijuana, not by encouraging them to possess or use alcohol. Nevertheless, defendant asserts that this was relevant impeachment evidence. According to defendant, C.C. supposedly was intoxicated on alcohol obtained at defendant's apartment, yet he took a breath test that revealed the presence of no alcohol.

The trial court disallowed the questions, concluding that evidence of the breath test required a foundation regarding the accuracy of the test, the expertise of the operator, and other attendant circumstances. The court did allow the defense to inquire "as to [C.C.'s] opinion as to whether or not he was drunk or intoxicated or the like."

Defendant does not contend that he laid a proper foundation, but claims the evidence was admissible as a prior inconsistent statement by the victim. However, even if we assume this ground for admission was properly raised before the trial court, we are not persuaded that the test results constituted a prior statement which was inconsistent with the victim's pretrial or trial testimony.

■ At a pretrial hearing, C.C. testified that he thought he had been drinking alcohol, but that "somehow or another [he] passed the breathalyzer. . . ." At trial, he similarly testified that he thought he was drunk after drinking the liquid supplied by defendant. Hence, the evidence of a zero blood alcohol level was consistent with C.C.'s earlier testimony that he passed the breathalyzer. Insofar as the test results were being offered to prove that C.C. was not actually drunk, we agree with the trial court that a prerequisite to such proof was a showing that the test results were reliable.

Under these circumstances, we thus perceive no abuse of discretion by the trial court in excluding the proffered evidence based on the lack of a foundation. *See People v. Dunlap, supra.*

## II. Jury Instructions

Defendant next contends that certain of the jury instructions were deficient and that reversal is required on that basis. We address and reject each argument in turn.

### A. Specific Transactions Instruction

■ Defendant asserts that because the People introduced evidence of numerous transactions, not all of which were charged, the trial court erred in failing to instruct the jury as to the specific transactions relied on by the People for conviction. We disagree.

■ Where, as here, the defendant fails to object to a jury instruction at trial, our review is limited to determining whether the instruction constituted plain error. Plain error occurs when, after a review of the entire record, the appellate court can say with fair assurance that the error so undermined the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction. *People v. Bernabei,* 979 P.2d 26 (Colo.App.1998). *See People v. Hansen,* 920 P.2d 831 (Colo.App.1995) (in prosecution for a pattern of sexual abuse, trial court did not commit plain error in failing to require the prosecution to elect the act charged or to provide any specification in the jury instructions concerning this charge).

■ When there is evidence of many transactions, any one of which would constitute the offense charged, the prosecution may be compelled to select the transaction on which it relies for a conviction. Alternatively, the jurors should be instructed that, in order to convict the defendant, they must either unanimously agree that the defendant committed the same act or acts, or that the defendant committed all the acts described by the victims and included within the period charged. *People v. Thurman,* 948 P.2d 69 (Colo.App.1997).

Here, the jury was informed—through the evidence and closing arguments—which transactions the People were relying on, and the trial court gave a special unanimity instruction as required by *People v. Thurman, supra.* Hence, we conclude the trial court's failure to give an instruction listing the specific transactions did not constitute plain error. *See People v. Hansen, supra.*

### B. Theory of the Case Instruction

■ Defendant also contends reversal is required because the trial court failed to give the theory of the case instruction that he tendered. We disagree.

■ An instruction embodying the defendant's theory of the case must be given by the trial court if the record contains any evidence to support the theory. And, the court has an affirmative obligation to cooperate with counsel either to correct the ten-

dered theory of the case instruction or to incorporate the substance of the theory in an instruction drafted by the court. But, it is not error to reject defendant's theory of the case instruction if the theory is unsupported by the evidence or is embodied in the other instructions. *People v. Nunez*, 841 P.2d 261 (Colo.1992).

Defendant's theory of the case was that he was authorized by the Federal Bureau of Investigation (FBI) to engage in unlawful activities, and that he could not be held criminally liable for actions taken at the FBI's request. However, while there was evidence presented that defendant had worked for the FBI as a cooperating witness, and at one time was authorized to possess illegal pornography, there was no evidence that he had been authorized to provide minors with alcohol or drugs, or to abuse children sexually. The jurors also were informed during the defense's closing argument about defendant's cooperation with the FBI and his perceived justification for certain of his actions.

We therefore conclude the trial court did not err in refusing to give defendant's theory of the case instruction.

### III. Double Jeopardy

■ Defendant next contends that, under the Double Jeopardy Clauses of the United States and Colorado Constitutions, he cannot be convicted of violating § 18–3–405(1)(2)(b), C.R.S. (1989 Cum.Supp.) (sexual assault on a child by one in a position of trust), and also convicted of violating § 18–3–403(1)(e), C.R.S.1999 (second degree sexual assault). We agree.

Section 18–3–405(1)(2)(b), the statute under which defendant was charged, was repealed on July 1, 1990. The definition of sexual assault on a child contained in § 18–3–405(1) remains the same, but the position of trust factor contained in § 18–3–405(2)(b) was removed and reenacted as a separate offense in § 18–3–405.3, C.R.S.1999. Section 18–3–405(2)(b) now contains a different sentence enhancer to § 18–3–405(1), and the original position of trust language can only be found in the Session Laws. *See* Colo. Sess. Laws 1983, ch. 197, § 18–3–405(2)(b) at 693.

To avoid confusion with the current version of § 18–3–405(1)(2)(b), we will refer to the statute under which defendant was charged as § 18–3–405(1) (containing the definition of the crime of sexual assault on a child) and refer to the position of trust sentence enhancer as Colo. Sess. Laws 1983, ch. 197, § 18–3–405(2)(b) at 693.

■ A court is prohibited from imposing multiple punishments for a greater and lesser included offense by the Double Jeopardy Clauses of the federal and state constitutions, by statute, and by the rule of merger. *People v. Leske*, 957 P.2d 1030 (Colo.1998). *See* § 18–1–408(1)(a), C.R.S.1999.

■ Whether one offense is included in another is determined by applying the strict elements test set out in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). Under that test, if proof of the facts establishing the statutory elements of the greater offense necessarily establishes all of the elements of the lesser offense, the lesser offense is included for purposes of the Double Jeopardy Clauses and § 18–1–408(1)(a). *See People v. Leske, supra.*

■ If each offense necessarily requires proof of a fact which the other does not, the strict elements test is not satisfied and a presumption arises that convictions for both offenses are consistent with legislative intent. The supreme court has explained the interaction among double jeopardy, merger, and the analysis of lesser included offenses in this manner:

> [I]n Colorado "judicial merger has consistently been analyzed under double jeopardy principles" … [and] regardless of whether double jeopardy or merger principles are invoked, we employ an identical analysis to determine whether a lesser offense is "included" within a greater offense.

*People v. Leske, supra*, 957 P.2d at 1035. *See also* Nolan, *Diverging Views on the Merger of Criminal Offenses: Colorado Has Veered Off Course*, 66 U. Colo. L.Rev. 523 (1995) (discussing the analysis of statutory and judicial merger doctrines under double jeopardy principles).

For purposes of a double jeopardy analysis, a penalty enhancer is not a substantive element of the charged offense. A statutory provision is a penalty enhancer if its proof, while raising the felony level of the offense, is not required to secure a conviction. *See People v. Leske, supra.*

Here, the prosecution presented evidence of three separate transactions. Defendant was charged with and convicted of the following two counts arising from each transaction: (1) one count of sexual assault on a child by one in a position of trust; and (2) one count of second degree sexual assault.

The provision of the second degree sexual assault statute under which defendant was charged, § 18–3–403(1)(e), was the same for all of the counts. But, because the charges covered a five-year time span, defendant was charged with sexual assault on a child by one in a position of trust under two separate statutes.

In counts 3 and 4, he was charged under § 18–3–405.3, and he does not assert that this version of the position of trust statute conflicts with the second degree sexual assault statute for purposes of double jeopardy. But, in count 2, which concerned a transaction occurring between August 1, 1989, and June 30, 1990, he was charged under § 18–3–405(1) and Colo. Sess. Laws 1983, ch. 197, § 18–3–405(2)(b) at 693.

Defendant maintains that § 18–3–405(1), when considered without the sentence enhancer in Colo. Sess. Laws 1983, ch. 197, § 18–3–405(2)(b) at 693, conflicts with § 18–3–403(1)(e) on double jeopardy grounds, and we agree.

The elements of § 18–3–405(1) are that: (1) defendant (2) knowingly subjected another (3) not his or her spouse (4) to any sexual contact, (5) the victim was less than fifteen years of age, and (6) the defendant was at least four years older than the victim. Until July 1, 1990, the sentence imposed for this offense was enhanced from a class 4 to a class 3 felony if the defendant was in a position of trust with respect to the victim. *See* Colo. Sess. Laws 1983, ch. 197, § 18–3–405(2)(b) at 693.

The elements of § 18–3–403(1)(e) are that: (1) defendant (2) knowingly inflicted (3) sexual penetration or sexual intrusion on a victim, and at the time of the commission of the act, (4) the victim was less than fifteen years of age, (5) defendant was at least four years older than the victim, and (6) defendant was not the victim's spouse.

The position of trust provision in Colo. Sess. Laws 1983, ch. 197, § 18–3–405(2)(b) at 693, is a penalty enhancer, and is not included in our comparison of the elements of the two statutes. *See People v. Leske, supra.* The remaining elements are identical with one exception: § 18–3–403(1)(e) requires sexual penetration or intrusion. Section 18–3–405(1) only requires sexual contact. However, because proof of the facts establishing the statutory element of sexual penetration necessarily establishes proof of the facts establishing the element of sexual contact, the *Blockburger* test is satisfied as is the test embodied in § 18–1–408(1)(a). *See People v. Leske, supra.*

We therefore conclude that § 18–3–405(1) (sexual assault on a child) is a lesser included offense of § 18–3–403(1)(e) (second degree sexual assault). The fact that defendant's conviction also included the then-existing position of trust enhancement provision of Colo. Sess. Laws 1983, ch. 197, § 18–3–405(2)(b) at 693, does not affect this result.

Accordingly, defendant cannot be convicted of sexual assault on a child by a person in a position of trust under § 18–3–405(1) and Colo. Sess. Laws 1983, ch. 197, § 18–3–405(2)(b) at 693; and also convicted of second degree sexual assault. One of the convictions must be vacated.

In so holding, we do not suggest—nor does defendant assert—that the present version of the position of trust statute, § 18–3–405.3, conflicts with the second degree sexual assault statute for purposes of double jeopardy.

Our conclusion does not conflict with *People v. Opson*, 632 P.2d 602 (Colo.App.1980). There, the panel held that §§ 18–3–405(1) (sexual assault on a child) and 18–3–403(1)(b), C.R.S.1999 (second degree sexual assault), did not conflict on double jeopardy grounds. However, *Opson* involved a different subsec-

tion of the second degree sexual assault statute, containing different elements, and is inapposite to this case.

 In deciding which of two convictions to retain under these circumstances, the court should enter as many convictions and impose as many sentences as are legally possible so as fully to effectuate the jury's verdict. A court should consider the General Assembly's felony classification of the various crimes committed by the defendant together with the °length of sentences, and maximize the jury's verdict which gives effect to the most serious offense. *People v. Jones*, 990 P.2d 1098 (Colo.App.1999).

 Although both crimes here are classified as class 4 felonies, sexual assault on a child rises to a class 3 felony with the penalty enhancer of proof that the defendant was in a position of trust. Retaining defendant's conviction under § 18–3–405(1) and Colo. Sess. Laws 1983, ch. 197, § 18–3–405(2)(b) at 693, effectuates the felony with the higher classification and maximizes the jury's verdict. *See People v. Jones, supra.* Therefore, we vacate defendant's conviction for count 5 (second degree sexual assault). On remand the trial court should correct the mittimus accordingly.

### IV. *Ex Post Facto* Prohibition

Defendant next contends two of his convictions violate the constitutional prohibition against *ex post facto* laws: (1) his conviction for sexual assault on a child as a part of a pattern of sexual abuse under § 18–3–405(2)(d), C.R.S.1999; and (2) one of his convictions for sexual assault on a child by one in a position of trust under § 18–3–405.3. We disagree as to his conviction for a pattern of sexual abuse, but agree as to his conviction for sexual assault by one in a position of trust.

 An *ex post facto* law is prohibited because it imposes punishment for an act which was not a crime when it was committed, makes the punishment for a crime more onerous than when the crime was committed, or deprives a defendant of a defense that was available at the time the crime was committed. U.S. Const. art. I, § 10 and Colo.

Const. art. II, § 11. *See People v. Luman*, 994 P.2d 432 (Colo.App.1999); *People v. Graham*, 876 P.2d 68 (Colo.App.1994).

 The purpose of the prohibition against *ex post facto* legislation is:

[T]o provide fair warning to individuals of the scope of their punishment and liability so that they may rely upon the meaning of the statutes until they have been explicitly revised. In other words, it requires that persons be given fair notice of the penalties which government may impose on those who violate the laws.

*People v. Stewart*, 926 P.2d 105, 108 (Colo. App.1996).

 For a criminal statute to be considered an *ex post facto* law, it must apply to events occurring before its enactment, and must disadvantage the offender affected by it. To be retrospective, the law must change the legal consequences of acts completed before its effective date. If the law's punitive features apply only to acts committed after the statutory provision becomes effective, the law does not violate the *ex post facto* clause. *People v. Bowring*, 902 P.2d 911 (Colo.App. 1995).

### A. Pattern of Sexual Abuse— § 18–3–405(2)(d)

 The pattern of abuse statute under which defendant was charged, § 18–3–405(2)(d), became effective on July 1, 1995. Section 18–3–405(1) defines sexual assault on a child. Section 18–3–405(2) designates the crime as a class 4 felony, but specifies that it becomes a class 3 felony if:

(d) The actor commits the offense as a part of a pattern of sexual abuse as described in subsection (1) of this section. No specific date or time must be alleged for the pattern of sexual abuse; except that *the acts constituting the pattern of sexual abuse must have been committed within ten years prior to the offense charged* in the information or indictment. The offense charged in the information or indictment shall constitute one of the incidents of sexual contact involving a child

necessary to form a pattern of sexual abuse as defined in section 18–3–401(2.5). (Emphasis added).

It is undisputed that all of the incidents for which defendant was charged occurred before July 1, 1995, when § 18–3–405(2)(d) went into effect.

Defendant maintains that the statute *as applied to him* violates the *ex post facto* clause. Contrary to his contention, we conclude he is not being punished for any act which was not a crime when it was committed, nor is he disadvantaged in any significant manner.

Legislation criminalizing a pattern of sexual abuse did not originate with § 18–3–405(2)(d). In 1989, the General Assembly passed Colo. Sess. Laws 1989, ch. 163, § 18–3–405(2)(c) at 903, which also imposed a greater criminal liability for a sexual assault on a child if it was part of a pattern of sexual abuse. Hence, there was a pattern of sexual abuse statute in effect between August 1, 1989, and March 7, 1994, the dates of defendant's unlawful sexual acts.

The earlier statute, Colo. Sess. Laws 1989, ch. 163, § 18–3–405(2)(c) at 903, specified that "the acts constituting the pattern of sexual abuse must have been committed *within ten years of the offense* charged . . . ." (emphasis added). The statute was amended in 1995, and reenacted as § 18–3–405(2)(d), which now specifies that the other act of sexual abuse must have occurred within ten years *prior to* the predicate offense.

This difference in language is important, and in this regard, we observe that there is potentially confusing language in *People v. Hansen, supra,* 920 P.2d at 834. The *Hansen* court there expressly stated its intent to quote the later version of the pattern of abuse statute, § 18–3–405*(2)(d),* but instead—apparently inadvertently—recited the original language of Colo. Sess. Laws 1989, ch. 163, § 18–3–405*(2)(c)* at 903. While this error does not affect the result in *Hansen,* which remains good law, it is worthy of note.

In this case, because Colo. Sess. Laws 1989, ch. 163, § 18–3–405(2)(c) at 903, was in effect when defendant committed his offenses, we conclude he is not being retroac-

tively punished for acts that were innocent when committed. Nor did the amendment embodied in § 18–3–405(2)(d) change the punishment or deprive him of any defense. To the contrary, the 1995 amendment provided him with an additional defense; namely, that the other acts of sexual abuse constituting a pattern must have been committed within ten years *prior to* the offense charged.

Accordingly, we reject defendant's contention that § 18–3–405(2)(d), as applied to him, is an *ex post facto* law prohibited by U.S. Const. art. I, § 10 and Colo. Const. art. II, § 11.

## B. Position of Trust—§ 18–3–405.3

 However, we agree with defendant that § 18–3–405.3, as applied to him in count 3 only, violates the constitutional prohibition against *ex post facto* legislation.

Count 3 charged defendant with sexual assault on a child by one in a position of trust, and was based on an incident occurring between June 1, 1990, and June 1, 1991. But, § 18–3–405.3 did not become effective until July 1, 1990, leaving a one month period prior to the statute's enactment.

While the jurors clearly could have convicted defendant under § 18–3–405.3, based on an act that occurred after the effective date of the statute, they were not instructed that defendant's conviction had to be based on such an act. Nor can we determine whether defendant was convicted of an act committed before or after the statute became operative. *People v. Luman, supra; People v. Graham, supra.* Because the verdict could have been based on an act which preceded the passage of the statute, we conclude defendant was disadvantaged by the statute's application to him. *See People v. Graham, supra.*

We reach this conclusion even though we agree with the People that sexual assault by a person in a position of trust was contained prior to July 1, 1990, in § 18–3–405(1) and Colo. Sess. Laws 1983, ch. 197, § 18–3–405(2)(b) at 693, albeit as a penalty enhancer. Nevertheless, if the defendant had been charged under § 18–3–405(1) and Colo. Sess. Laws 1983, ch. 197, § 18–3–405(2)(b) at 693, in count 3, as he was in count 2, he could only

have been convicted and sentenced for that one crime *or* for second degree sexual assault.

Because under § 18–3–405.3, defendant could be convicted and sentenced for *both* crimes, we conclude he was disadvantaged and that § 18–3–405.3 as applied to him in count 3 violated the prohibition against *ex post facto* legislation. On remand, the trial court should vacate defendant's conviction for count 3.

### V. Pattern of Abuse Instructions

■ Defendant next contends the conviction for a pattern of sexual abuse under § 18–3–405(2)(d) must be reversed because the jurors were not instructed that they had to find he had committed another act of sexual abuse within ten years *prior to* the act charged—that is, prior to the period of August 1, 1989, to June 30, 1990. We agree a new trial is required as to this count.

■ Initially, we observe that defendant did not object to the instructions, and we therefore review them under the plain error standard. *See People v. Bernabei, supra.*

As previously observed, under the earlier pattern of abuse statute, the acts constituting the pattern of sexual abuse must have been committed *within ten years of* the predicate offense charged. Colo. Sess. Laws 1989, ch. 163, § 18–3–405(2)(c) at 903. In contrast, pursuant to the current statute under which defendant was charged, the acts constituting the pattern of sexual abuse must have occurred within *ten years prior to* the predicate offense. Section 18–3–405(2)(d). Hence, the jurors should have been instructed that they had to find another act of sexual abuse within ten years *prior to* the act charged.

Here, the jurors were not instructed about the ten-year period requirement using the language of *either* statute. The record reflects they were instructed regarding the elements of sexual abuse on a child—pattern of sexual abuse, and informed they had to find that "the defendant committed the offense as part of a pattern of sexual abuse." Pattern of sexual abuse was separately defined. *See* § 18–3–401(2.5), C.R.S. 1999 (de-

fining a "pattern of sexual abuse" as "the commission of two or more incidents of sexual contact involving a child when such offenses are committed by an actor upon the same victim"); *People v. Hoefer,* 961 P.2d 563 (Colo.App.1998).

Another instruction informed the jurors that, in order to find the defendant guilty of sexual assault on a child—pattern of abuse, they "must also find the defendant guilty of at least one count of sexual assault on a child by one in a position of trust (counts two, three or four)." A third instruction informed the jurors of the charges against defendant and of the dates alleged by the prosecution. It specifically stated that there were three counts charging defendant with sexual assault on a child by one in a position of trust which were:

> (Count two), between and including August 1, 1989 and June 30, 1990; ... (Count three) between and including June 1, 1990 and June 1, 1991; ... [and] (Count four), between and including June 1, 1993 and December 31, 1993....

Hence, the prosecution presented three predicate offenses, and under the statute, "the offense charged in the information or indictment shall constitute one of the incidents of sexual contact involving a child necessary to form a pattern of sexual abuse as defined in section 18–3–401(2.5)." Section 18–3–405(2)(d).

Section 18–3–405(2)(d) is a sentence enhancer to § 18–3–405(1), not a separate crime. Thus, only a count charged under § 18–3–405(1) could serve as the predicate offense for § 18–3–405(2)(d). *See People v. Hansen, supra.*

Because counts 3 and 4 were charged under § 18–3–405.3, and not under § 18–3–405(1), they could not serve as the predicate offense as a matter of law. Only count 2 could serve as the predicate offense, which means that in order to find defendant guilty of a pattern of sexual abuse as charged under § 18–3–405(2)(d), the jury had to find him guilty of count 2 and another act of sexual abuse within ten years prior to the period of August 1, 1989 to June 1, 1990.

The jury did find defendant guilty as to count 2, but that count was based on testimony by D.P. regarding fondling and oral sex with defendant in late August or September 1989. D.P. testified that this incident was the first instance of sexual activity with defendant. Importantly, the August or September 1989 incident involving oral sex was not only the predicate offense for the purposes of the pattern of abuse count, but according to D.P.'s testimony it was also the *earliest* sexual act proven at trial.

Thus, while there was considerable evidence about later sexual acts, we have not found evidence in the record of another act of sexual abuse within ten years *prior to* the period of August 1, 1989, to June 30, 1990, and specifically within ten years prior to the predicate act, as was required by the statute.

The record also reflects that, during the discussion regarding jury instructions, there was some confusion about which statute applied to defendant's acts and which instructions should be given. Perhaps as a result of that confusion, the prosecutor told the jurors during closing argument, in effect, that they could return a guilty verdict on the pattern of abuse count if they found defendant had committed *any of the proven acts*. The prosecutor stated that:

> Now, the most complicated count is called a pattern count. In order to find the defendant guilty of a pattern, you must find that one of the previous charges exist, but he'd been found guilty of either Count 2, 3, 4, 5, 6, or 7, or all of them; that on or between the dates charged, which is August 1st of '89, to March 7th of '94, the defendant engaged in an ongoing sexual relationship with the victim in this case, [D.P.]. It doesn't have to be anal intercourse. It doesn't have to be oral sex. It doesn't have to be sexual contact. *It can be a combination of any of those with any of the charges.*
>
> So if, during the time frame of the first count, Count No. 2, you believe that oral sex occurred on more than one occasion, that alone will sustain a pattern count. If you believe with regard to Count 3 that oral sex occurred, plus other acts of oral sex, during that same time frame, you may

find the defendant guilty of a pattern. And the same thing for Count 4. If you believe 2 and 3 occurred, it's easy. You have two different time frames, two different events; that equals a pattern.

> . . . .
>
> With regard to the pattern count, you can only use the position of trust; you cannot use the second degree sex assault. And that's just more complicated, if you find that any of these events occurred. Counts 2, 3, and 4, use those counts for determining whether there's a pattern or not.

(Emphasis added).

While no objection was raised to the prosecutor's argument, it was nevertheless a misstatement of the law in that it invited the jury to find defendant guilty of the pattern of abuse count based on any two sexual acts, regardless of when they occurred.

For these reasons and upon review of the entire record, we conclude that the absence of a jury instruction about the "ten years prior to" requirement contained in the pattern of abuse statute, combined with the other circumstances of this case, so undermined the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction on the pattern of abuse count, and constituted plain error. *People v. Bernabei, supra.* See *People v. Garcia,* 1 P.3d 214 (1999).

We therefore reverse and remand for a new trial on the pattern of abuse count.

## VI. Sentencing

The People concede—and we agree—that count 4 (sexual assault on a child by one in a position of trust), and count 7 (second degree sexual assault) were based on identical evidence, and therefore the sentences must run concurrently rather than consecutively. *See* § 18-1-408(3), C.R.S.1999; *People v. Dixon,* 950 P.2d 686 (Colo.App.1997). On remand, the trial court shall correct the sentence accordingly.

█ At issue, however, is defendant's final contention that the trial court erred by considering facts tending to establish elements of the underlying offenses as extraor-

**16**

dinary aggravating circumstances. The People assert that the trial court did not err in this regard, and we agree.

A sentencing court may impose a sentence up to twice the maximum authorized in the presumptive range based on the presence of extraordinary aggravating circumstances. Section 18–1–105(6), C.R.S.1999; *People v. Leske, supra.*

 Sentencing requires familiarity with the circumstances of a case, and a trial court's sentencing decision will not be disturbed on review absent a clear abuse of discretion. A sentencing court abuses its discretion if it fails to consider "the nature of the offense, the character and rehabilitative potential of the offender, the development of respect for the law and the deterrence of crime, and the protection of the public." *People v. Leske, supra,* 957 P.2d at 1043.

 When, as here, the court imposes an aggravated sentence that is not based upon a factor in § 18–1–105(9)(a), C.R.S.1999, the court must make specific findings supported by evidence in the record of the sentencing hearing or the presentence report detailing the extraordinary aggravating factors present. When the court finds several extraordinary aggravating factors, only one of those factors need be legitimate to support the court's sentence. *People v. Leske, supra.*

 In addition to the factors listed in § 18–3–105(9)(a), the trial court may consider at sentencing:

[U]nusual aspects of the defendant's character, past conduct, habits, health, age, the events surrounding the crime, pattern of conduct which indicates whether [the defendant] is a serious danger to society, past convictions, and possibility of rehabilitation.

*People v. Leske, supra,* 957 P.2d at 1043.

 It also may consider as extraordinary aggravating circumstances facts tending to establish an element of an offense, as long as the court relates those facts to the particular defendant and the circumstances of the crime. *People v. Leske, supra.*

Here, the trial court found, based on information contained in the presentence report, that defendant posed a danger to society. That is sufficient to support an aggravated sentence. *People v. Leske, supra.* In addition, the court found that the defendant had inflicted substantial emotional and psychological harm on his victims, that they were extremely vulnerable, that defendant was likely to reoffend, and that the jury had determined that count 2 was a crime of violence.

Accordingly, we conclude the trial court did not abuse its discretion in sentencing defendant in the aggravated range.

## VII. Summary

The judgment of conviction for count 1 (sexual assault on a child as part of a pattern of sexual abuse) is reversed, and the cause is remanded for a new trial as to that count. The judgments of conviction and the 16–year sentences imposed for counts 2 and 4 (sexual assault on a child by one in a position of trust) and counts 6 and 7 (second degree sexual assault) are affirmed, as are the 5–year sentences imposed for Counts 8 and 9 (contributing to the delinquency of a minor).

On remand, the trial court should vacate the defendant's convictions for count 3 (sexual assault on a child by one in a position of trust) and count 5 (second degree sexual assault); it should further order that the sentences for count 4 (sexual assault on a child by one in a position of trust) and count 7 (second degree sexual assault) run concurrently. The total sentence should be 53 years in the DOC, plus parole as required by statute, minus credit for presentence confinement.

The judgment is affirmed in part and reversed in part, and the cause is remanded for correction of the mittimus and for further proceedings consistent with the views set forth in this opinion.

Judge KAPELKE and Judge CASEBOLT concur.